1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
JOSEPH A. BROWN,              )
                             )
             Plaintiff       )
                             )
        vs                   )   14cv1133
                             )
MATT EDINGER, Et.Al.,        )
                             )
             Defendants      )
_____ )
```

TRANSCRIPT OF PROCEEDINGS - EVIDENTIARY HEARING
BEFORE THE HONORABLE JOSEPH F. SAPORITO, JR.
TUESDAY, MAY 2, 2017; 10:00 A.M.
WILKES-BARRE, PENNSYLVANIA

FOR THE PLAINTIFF:

    Pro Se

FOR THE DEFENDANTS:

    UNITED STATES ATTORNEY'S OFFICE
    By: G. Michael Thiel, Esq.
    U.S. Federal Courthouse
    235 N. Washington Avenue
    Scranton, Pennsylvania  18503

    Proceedings recorded by machine shorthand, transcript
produced by computer-aided transcription.
_____

KRISTIN L. YEAGER, RMR, CRR
CERTIFIED REALTIME REPORTER
235 N. WASHINGTON AVENUE
SCRANTON, PENNSYLVANIA  18503

# I N D E X

| Witnesses: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Joseph Brown (As of Cross) | 5 | 40 | -- | -- |
| Joseph Brown (Direct testimony) | 28 | -- | -- | -- |
| Matthew Edinger | 48 | 59 | 61 | -- |
| Keri Ann Sorce | 64 | 81 | -- | -- |

# E X H I B I T   I N D E X

| For Plaintiff: | Identified | Admitted |
|---|---|---|
| Exhibit Nos. 1-3 | 29,30,32,75,77 | 107 |
| Exhibit No. 4 | 90 | 107 |
| Exhibit No. 5 | 105 | 107 |
| | | |
| For Defendant: | | |
| Exhibit No. 1 | 7,68 | 108 |
| Exhibit No. 2 | 12,13,70 | 108 |
| Exhibit No. 3 | 15 | 108 |
| Exhibit No. 4 | 13 | 108 |
| Exhibit No. 5 | 64 | 108 |
| Exhibit No. 6 | 77 | 108 |
| Exhibit No. 7 | 72 | 108 |
| Exhibit No. 8 | 52 | 108 |
| Exhibit No. 9 | 19 | 108 |
| Exhibit No. 10 | 71,72 | 108 |
| Exhibit No. 11 | 74 | 108 |

1    THE COURT: We are here in the matter of Joseph A. Brown v.

2  Matthew Edinger and the United States. We're here for the

3  purposes of engaging in an evidentiary hearing for the sole and

4  exclusive purpose of determining whether Mr. Brown exhausted

5  his administrative remedies. Am I correct on that?

6    MR. THIEL: Yes, Your Honor.

7    MR. BROWN: Yes.

8    THE COURT: Before we proceed with testimony, I'll entertain

9  some opening statements, since Mr. Edinger has the burden of

10  proof. Mr. Thiel, we will allow you to open, if you'd like.

11    MR. THIEL: Just basically, we're going to present evidence

12  in the form of his complaint and some other filings that

13  indicate he claimed, at those times of filing, that he filed a

14  BP8 on November 20th and thereafter followed up with BP9's,

15  10's and 11's.

16    If you believe everything he said in his complaint,

17  regarding the BP8 filed on November 20 and then in his other

18  filings, which we have here as exhibits, there's no way he

19  could have properly exhausted.

20    The incident that took place that he was grieving was in

21  July, July 28 of 2012, I believe. He would have had to have

22  filed a BP8 within 20 days, which would be around August 17th

23  of 2012.

24    In his complaint, he says he filed that BP8 on November

25  20th, and then he says he filed thereafter the BP9, BP10 and

1  BP11. In his complaint, he says that he got no response to

2  those. So even if you accept everything he says as true, he's

3  late, he didn't properly exhaust. And we have more proof along

4  those lines, with regard to that, and that's basically it.

5      THE COURT: Mr. Brown, I'll afford you the opportunity, as

6  well, to make an opening statement, if you'd like.

7      MR. BROWN: Yes. What the Plaintiff will show this morning

8  is that he adequately and properly and timely exhausted his

9  administrative remedies that were made available to him.

10     The Plaintiff will show evidence to the Court of documents

11 and records pertaining to the exhaustion of administrative

12 remedies to confirm everything that will be presented to the

13 Court this morning. That's pretty much my opening statement at

14 this time.

15     THE COURT: Mr. Thiel, how many witnesses do you expect to

16 call?

17     MR. THIEL: Mr. Brown and two others. The Defendant Matt

18 Edinger, his unit counselor, and Keri Sorce who is the

19 Administrative Remedies Clerk, and I'll have them introduced on

20 the record.

21     THE COURT: Very well. We are ready to proceed whenever you

22 are.

23     MR. THIEL: Mr. Brown, please.

24     THE COURT: Mr. Brown, come up here and be sworn in.

25 J O S E P H    A.    B R O W N  IS CALLED AS OF CROSS

5

1  EXAMINATION, AND HAVING BEEN DULY SWORN, TESTIFIED AS FOLLOWS:

2      THE CLERK: Will you please state your name and spell it for

3  the record.

4      THE WITNESS: Joseph Anthony Brown, and you spell it

5  J-O-S-E-P-H, middle name is A-N-T-H-O-N-Y, and my last name is

6  Brown, B-R-O-W-N.

7      THE CLERK: Thank you. You may be seated.

8      THE COURT: You may proceed.

9                    DIRECT EXAMINATION

10 BY MR. THIEL:

11 Q.   Good morning, Mr. Brown.

12 A.   Good morning.

13 Q.   You've been in about 10 different Federal prisons over the

14 years, sir; correct?

15 A.   Around about.

16 Q.   When you arrived at each of these institutions, you were

17 provided a copy of the inmate's handbook, were you not?

18 A.   Yes.

19 Q.   And in the inmate's handbook, there's a section that

20 provides inmates like yourself with instructions how to file

21 grievances; correct?

22 A.   Correct.

23 Q.   So you're familiar with the administrative remedy process

24 in Federal prisons; correct?

25 A.   Yes.

**6**

1  Q.    And, in fact, you've been filing grievances in the Federal

2  system since, at least, 2002; correct?

3  A.    Whenever I was admitted to Federal custody.

4  Q.    As far as you know, it's the same process in all Federal

5  prisons, including USP Lewisburg; correct?

6  A.    As far as I know. Normally.

7  Q.    You know that, in order to start the administrative remedy

8  process, you must file a BP8 within 20 days of the occurrence

9  that you want to grieve; correct?

10 A.    Normally, that is correct.

11 Q.    You knew this 20-day rule from the literature that you've

12 reviewed; correct?

13 A.    Yes.

14 Q.    You told me at your deposition that you're also familiar

15 with this rule, the 20-day rule, that is, within which to

16 submit a BP8 because of your constant litigation in courts;

17 correct?

18 A.    Yes.

19      MR. THIEL: May I approach, Your Honor?

20      THE COURT: You may.

21 BY MR. THIEL:

22 Q.    This is the book of exhibits I just put on your desk. When

23 I ask you to look at Exhibit No. 1, I'm referring to that,

24 okay?

25 A.    Yes.

7

1  Q.    Put this in front of you there.

2  A.    Yes.

3       MR. THIEL: Please let the record reflect I'm asking the

4  Plaintiff to look at Defendant's Exhibit 1.

5  BY MR. THIEL:

6  Q.    Can you take a moment and review that document, sir,

7  Defendant's Exhibit 1?

8  A.    (Witness complied.)  Okay.

9  Q.    It's a copy of your complaint, isn't it, sir?

10 A.    Yes.

11 Q.    It's your understanding, is it not, that in your

12 underlying lawsuit against Mr. Edinger, you claim that he

13 retaliated against you on July 28, 2012 by making you share a

14 cell with someone that you were not compatible with, basically,

15 correct?

16 A.    Correct.

17 Q.    And you knew on that date of the incident, July 28, 2012,

18 that you had 20 days from the date within which to file your

19 BP8 and start the administrative remedy process; correct?

20 A.    That is correct.

21 Q.    Please turn to Page 2 of Defendant's Exhibit 1. In section

22 2 at the top, it says, Exhaustion of administrative remedies.

23 Do you see where at there?

24 A.    Yes.

25 Q.    It asks you if you've fully exhausted your administrative

8

1  remedies; correct?

2  A.    Let me --

3  Q.    Page 2, sir. Page 2 of that exhibit.

4        MR. THIEL: May I approach, Your Honor?

5        THE COURT: You may.

6        MR. THIEL: Not Exhibit 2, Exhibit 1, Page 2.

7        THE WITNESS: Okay. Sorry about that.

8  BY MR. THIEL:

9  Q.    That's no problem. I'll ask it again. In Section 2 on Page

10  2 of Defendant's Exhibit 1, it asks you if you fully exhausted

11  your administrative remedies; correct?

12  A.    Yes.

13  Q.    You checked the box, Yes, correct, indicating that you

14  fully exhausted your administrative remedies; correct?

15  A.    Yes.

16  Q.    Then it asks you to explain the steps that you took, does

17  it not?

18  A.    Yes.

19  Q.    You wrote, correct me if I'm wrong, "I tried to exhaust

20  all administrative remedies available. See Exhibit A, BP8, BP9,

21  BP10 and BP11." Correct?

22  A.    Correct.

23  Q.    It asks you, "What was the result?" You wrote, "Received

24  no response." Correct?

25  A.    That is correct.

9

1  Q.   Please turn to Page 5 of the same exhibit, Defendant's

2  Exhibit 1. Are you there, sir?

3  A.   Number 1?

4  Q.   Exhibit No. 1, Page 5.

5  A.   Yes.

6  Q.   This is a declaration signed by you, under penalty of

7  perjury, indicating that what was set forth within Defendant's

8  Exhibit 1, your complaint, was true and accurate; correct?

9  A.   That is correct.

10 Q.   Everything that you did to try to grieve the July 28, 2012

11 incident is contained within your complaint; correct?

12 A.   Everything?

13 Q.   Yes.

14 A.   Just about everything.

15 Q.   Please turn to Page 11 of Defendant's Exhibit 1. Are you

16 there, sir?

17 A.   Yes.

18 Q.   What is represented on Page 11 of Defendant's Exhibit 1 is

19 an informal resolution attempt, also known as BP8, filled out

20 by you sometime on or after November 20th, 2012; correct?

21 A.   That is correct.

22 Q.   According to your complaint, that is the BP8 you filed to

23 start the administrative remedy process, arising out of the

24 July 28, 2012 incident with your cellmate; correct?

25 A.   That is correct.

1 Q.    You would agree with me, would you not, that according to

2 the prison rules, the ones we just talked about, you were

3 supposed to file your BP8 within 20 days of July 28; correct?

4 A.    Only if it's made available.

5 Q.    Gotcha. In 20 days from July 28 would be on or about

6 August 17, 2012; correct?

7 A.    Around about, yes.

8 Q.    So you would agree, would you not, that the BP8 that you

9 submitted on November 20th, 2012 is more than three months

10 late, isn't it?

11 A.    That is correct -- no, no, I wouldn't say it's late,

12 correction, let me clarify this. I would say it's a little

13 late.

14 Q.    Okay. Mr. Brown, I reviewed your complaint over and over

15 again, and I was not able to locate anything in there where you

16 informed the Court that you were denied administrative remedy

17 forms by Mr. Edinger or anyone else.

18      But I don't want you to take my word for it, so I'm going

19 to give you the opportunity to look at Defendant's Exhibit 1

20 right now, your complaint, and tell the Court where, if

21 anywhere in your complaint, you tell us you were denied

22 administrative remedy forms.

23 A.    All I can say is, in reference to the complaint is that

24 when I say I tried, meaning, that I attempted, I tried, but it

25 was not made available to me by Counselor Edinger.

1  Q.   My question is simply this, and you could explain. In your

2  complaint, is there anywhere in there that you say you were

3  denied a BP8, BP9, BP10 or BP11, is there anywhere in there

4  that you say that?

5  A.   No, but the language is clear that I tried.

6  Q.   In your complaint?

7  A.   Yeah, I tried to exhaust all of my administrative remedies

8  that were made available to me.

9  Q.   But there was no response, that's what you told us in your

10 complaint; correct?

11 A.   No, no, listen. I said I received no response after filing

12 the BP8 on November 20, and I don't -- the only thing that I

13 disagree with is that this procedure wasn't made available to

14 me, at the time, within the 20 days of.

15 Q.   Okay. And that's my question to you. In your complaint, is

16 there anywhere in there where you tell the Court that the BP8

17 was denied to you?

18 A.   No, no. But I did say that I tried.

19 Q.   Right, you tried by filing the BP8 and the BP9.

20 A.   Excuse me. At the time that it was made available to me. I

21 was denied.

22 Q.   And it's not like you forgot to address the issue of

23 exhaustion in your complaint, correct? I mean, Page 2 of

24 Exhibit No. 1 asks you to address the issue of exhaustion,

25 right?

1  A.    I mean --

2  Q.    Page 2 of Exhibit No. 1 asks you to address the issue of

3  exhaustion. And in your complaint, you did that; correct?

4  A.    Yeah, to the best of my ability.

5  Q.    So despite being given the opportunity to address and say

6  anything you wanted about exhaustion in your complaint to get

7  what you did on the record, in your complaint, you don't say

8  anything in that complaint about being denied forms, do you?

9  A.    Not in my complaint.

10  Q.    Please turn to Defendant's Exhibit 2 in that binder. Can

11  you take a moment and review what has been previously marked as

12  Defendant's Exhibit 2, Mr. Brown?

13      THE COURT: Mr. Brown, when you testify, would you speak

14  clearly into the microphone? Thank you.

15      THE WITNESS: Okay.

16      MR. THIEL: Please let the record reflect that Defendant's

17  Exhibit 2 is a copy of Plaintiff's Statement of Undisputed

18  Facts previously filed with this Court as document no. 25.

19  BY MR. THIEL:

20  Q.    Can you please turn to Page 4 of Defendant's Exhibit 2,

21  sir? Are you there?

22  A.    Yes.

23  Q.    And just to make sure we're on the same page, it's

24  Paragraph 13 through 17 of your response. Is that where you're

25  at?

1  A.    Yes.

2  Q.    Please read out loud Paragraph 15.

3  A.    "The Plaintiff began to try to exhaust his administrative

4  remedies about the retaliatory misconduct by Counselor Edinger

5  and staff by filing a BP8 formal grievance in which he had five

6  days to give a response. See Exhibit D. BP8 was submitted to

7  Counselor Edinger."

8  Q.    Okay. Now, if you would, please turn to Exhibit No. 4,

9  Defendant's Exhibit 4.

10 A.    Okay.

11 Q.    Can you turn to Page 11 of Defendant's Exhibit 4?

12 A.    Okay.

13 Q.    In Defendant's Exhibit 4, which was previously filed with

14 this Court as document 28-4, Page 11 is your November 20th --

15 it's a copy of your November 20th, 2012 BP8; correct?

16 A.    That is correct.

17 Q.    That's the one we were talking about before, correct, this

18 is just another copy; correct?

19 A.    That is correct.

20 Q.    Now, let's go back to Exhibit No. 2, please. Page 4 again,

21 Exhibit No. 2, Page 4, Paragraph 13 through 17. Are you there,

22 sir?

23 A.    Yes.

24 Q.    I'm going to read Paragraph 15 again just to put us back

25 in the same spot.

**14**

1    "The Plaintiff began to try and exhaust his administrative

2    remedies about the retaliatory misconduct of Counselor Edinger

3    and staff by filing a BP8 informal grievance in which he had

4    five days to give a response. See Exhibit D. The BP8 was

5    submitted to Counselor Edinger."

6    Did I read that correctly?

7  A.    That is correct.

8  Q.    Mr. Brown, can you please read Paragraph 16 out loud?

9  A.    "Counselor Defendant never gave a response to the BP8

10   submitted to him by the Plaintiff on November the 20th, 2012.

11   See Exhibit D."

12  Q.    Sir, in fairness to you, that's consistent with your

13   complaint, is it not? You claim you submitted the BP8 November

14   20th, 2012 and never got a response; correct?

15  A.    That is correct.

16  Q.    Can you now read out loud Paragraph 17.

17  A.    "Counselor Defendant Edinger then acted with a deliberate

18   indifference towards the Plaintiff when he refused deliberately

19   numerous times a request made by the Plaintiff to be issued

20   other forms to continue grieving his complaint."

21  Q.    Turn to the next page of the exhibit, Page 5 of

22   Defendant's Exhibit 2. Read Paragraph 18 out loud, please.

23  A.    Paragraph 18?

24  Q.    Um-hum.

25  A.    "Plaintiff was denied his First Amendment right to free

1  speech by this Counselor Defendant to further exhaust his

2  administrative remedies about the incident that occurred on

3  July 28th, 2012."

4  Q.    Okay. Now, Paragraph 19.

5  A.    "The Plaintiff had to get a grievance BP9, 10 and 11 that

6  was used months later from other prisons to try and continue

7  exhaustion of the administrative remedy process."

8  Q.    Okay, thank you. So according to this, you don't even

9  claim in this document that you were denied a BP8 form but

10  rather you claim that you were denied the BP9's, BP10's and

11  BP11's; correct?

12  A.    That is correct.

13  Q.    So the BP8 form, according to this document and according

14  to your complaint, you had and you filed on November 20 of

15  2012; correct?

16  A.    That is correct.

17  Q.    And that would be more than three months late, would it

18  not?

19  A.    I would say late.

20  Q.    Please turn to Defendant's Exhibit 3 and review that, sir.

21  A.    You say Exhibit 3?

22  Q.    Um-hum.

23  A.    Any particular page?

24  Q.    Yes, Page 5.

25      MR. THIEL: Just for the record, let the record reflect

1   Defendant's Exhibit 3 is a copy of Plaintiff's Brief in

2   Opposition to Defendant's Motion for Summary Judgment

3   previously filed with this Court as document no. 26.

4         THE COURT: The record will so reflect.

5   BY MR. THIEL:

6   Q.    Are you on Page 5, sir?

7   A.    Yes.

8   Q.    Mr. Brown, the very top under, argument, do you see that?

9   A.    Yes.

10  Q.    Can you read that? Start reading and I'll stop you when I

11  need to.

12  A.    Okay.

13  Q.    Out loud, please. I'm sorry.

14  A.    "The Plaintiff disputes Defense's claim that the Plaintiff

15  did not exhaust his administrative remedies as misconstrued and

16  misleading, due to the retaliation of the Counselor Defendant

17  to provide, as are available, to Plaintiff any further

18  grievance forms to file after he received BP8, in reference to

19  him, that was not responded to."

20  Q.    That's enough. Thank you. So due to the retaliation

21  of -- this is what it says -- due to the retaliation of

22  Counselor Defendant to provide you the available, the Plaintiff

23  any further grievance forms to file after he received the BP8.

24  That's your claim; correct?

25  A.    No.

17

1  Q.    That's what it says right here, does it not?

2  A.    No, that's not a claim, that's a fact.

3  Q.    So you're claiming in here, though, that he denied you the

4  BP9's, 10's and 11's after you filed your BP8; right?

5  A.    That's a fact.

6  Q.    Okay. Can you look down at the last paragraph. It says,

7  "Although, the Plaintiff's efforts to exhaust", can you read

8  that out loud, please?

9  A.    "Although, the Plaintiff's efforts to exhaust his

10 administrative remedies was derailed by the Counselor Defendant

11 Edinger, the Plaintiff, through other prisoners, was able to

12 receive the other grievance forms to try to continue grieving

13 his complaint months later, in an effort to finish the

14 grievance process started months earlier on November the 20th

15 2012."

16 Q.    Okay. So according to this, you were denied the BP9's,

17 10's and 11's after you had started the administrative

18 grievance process months earlier on November 20th, 2012;

19 correct?

20 A.    Yes.

21 Q.    Now, sir, you claim you had to get these grievance forms,

22 these BP9's, 10's, 11's from other inmates; correct?

23 A.    That is correct.

24 Q.    At your deposition, you told me sometimes you have extra

25 forms in your legal property, don't you?

**18**

1  A.    Some.

2  Q.    Okay. You want this Court to believe that the inmates at

3  USP Lewisburg did not have available to them a ready supply of

4  BP9's, 10's and 11's, that's what you're trying to tell the

5  Court?

6  A.    No, that's not what I'm telling the Court.

7  Q.    In fact, you could have gotten them from another prisoner

8  at any time; right?

9  A.    I did get them from other prisoners. To clarify your

10  statement, although, at times, I have had administrative

11  remedies in my possession, I did not, during that time, during

12  that span, have any remedies in my possession. The remedies

13  that I use to continue grieving, the 9's 10's and 11's, came

14  from other prisoners.

15  Q.    You just told the Court that during that period of time,

16  from November 20th of 2012, until you filed that BP9 in March,

17  and I think it's March 22 of 2013, you didn't have any forms

18  available to you; correct?

19  A.    I got them from other prisoners.

20  Q.    Right, but that would be in March when you got it from the

21  other prisoners; correct?

22  A.    Well, I got other forms from other prisoners, even after

23  the November 20 BP8 that I filed. I never got any

24  administrative remedies from Counselor Edinger, from Counselor

25  Edinger after November the 20th of 2012.

19

1  Q.   Yes, 2012.

2  A.   The 2012 BP8 that I gave to him that I never received a

3  response from.

4  Q.   Let's be honest, sir, you and the other inmates have a

5  system, a way of getting whatever you need at the prison,

6  whether it be soap, whether it be deodorant or whether it be

7  documents like the administrative remedy forms, don't you?

8  A.   I wouldn't necessarily -- I couldn't -- I would never -- I

9  couldn't verify that, no.

10  Q.   Okay. Please turn to Exhibit No. 8 -- not 8, 9, I'm sorry,

11  Defendant's Exhibit 9.

12       Sir, do you remember me taking your deposition on or about

13  July 6 of last summer, 2016?

14  A.   Yes.

15  Q.   Could you please turn to Page 40 of Defendant's Exhibit 9?

16  A.   40?

17  Q.   Yes.

18  A.   Okay.

19  Q.   I asked you a question on line 3, okay;

20       "QUESTION: Okay, okay, now, because you're on lockdown 23

21  hours a day, how would you go about getting a BP10 from another

22  prisoner on the tier?"

23       And your answer was -- correct me if I'm wrong.

24       "ANSWER: I mean, listen, we have our way and our systems

25  of getting whatever material that we need to get, whether

20

1  documents or" --

2      And I said;

3      "QUESTION: Okay."

4      You said;

5      "ANSWER: Soap or" --

6      I said;

7      "QUESTION: Okay."

8      And you said;

9      "ANSWER: You know, deodorant or whatever. You know, I'm

10  not in here for that, to tell you exactly why or how."

11      Correct?

12  A.   Yes.

13  Q.   So the bottom line is, you could have gotten those forms

14  any time you wanted; right? You have a system.

15  A.   I wouldn't necessarily -- I can't say that there's a

16  system, because it's not nothing that we, you know, say like we

17  circumvent, in order to get these other necessities that we

18  need, you know, it's not like we wear -- you know, coordinating

19  some type of conspiracy -- that's just -- do you have it, and

20  if you don't, you don't, if you do, you do.

21      I don't know that he does or he doesn't. We not in cahoots

22  to get these type of items. We're not doing -- there's no

23  system, there's no -- do you have any honey over there or do

24  you have any sugar or anything? You know, you don't, you do.

25  It's not a system, a coordinated orchestrated attack.

21

1  Q.    Are you finished?

2  A.    Yeah.

3  Q.    Okay. Now, we just reviewed Defendant's Exhibit 2 and

4  Defendant's Exhibit 3 which were responses to our dispositive

5  motion, indicating that you did not exhaust your administrative

6  remedies.

7        And I looked through -- that's your complaint. I looked

8  through those documents front to back to see whether or not you

9  mentioned anything in there in Defendant's Exhibit 2 or

10 Defendant's Exhibit 3 to see if you had mentioned anywhere in

11 there about being denied a BP8 form and I was unable to find

12 any.

13       I want you to take this time, this opportunity to look at

14 Defendant's Exhibit 2 and Defendant's Exhibit 3 and tell us

15 where, if anywhere in those documents, you claim you were

16 denied a BP8.

17 A.    No. Counselor, for the record, so the Court doesn't become

18 misconstrued with where you're going with this.

19       Listen, when this complaint was filed, the administrative

20 remedies that were made available to me, at that time, was

21 attempted -- I tried to do it, when the complaint was filed.

22 You know, this complaint was filed nearly two years after the

23 incident occurred, and my point is, when the complaint, you

24 know -- the complaint is asking, in Exhibit 1 of the complaint,

25 it's asking me about the grievance procedure, and when this

22

1  complaint was filed and I was asked that question, to the best

2  of my ability, I was asked, you know, what was done, you know,

3  to the best of my ability, at the time.

4       I never specifically stated the chronological events of

5  what occurred, in reference to the grievance process concerning

6  this complaint.

7  Q.   Are you saying, in your complaint, you never stated the

8  chronological order of the administrative grievance process?

9  A.   Not according to Exhibit 1, Page 2, I didn't.

10 Q.   Well, let's review that, because we already did that, but

11 I'm happy to do it again.

12      You attached to your complaint the BP8, 9, 10 and 11, do

13 you not?

14 A.   Yes.

15 Q.   And they're dated, are they not?

16 A.   Sure are.

17 Q.   Your BP8 is dated November 20th, 2012; correct?

18 A.   November the 20th.

19 Q.   2012.

20 A.   Yes.

21 Q.   And your BP9 is dated March 22, 2013; correct?

22 A.   That is correct.

23 Q.   Your BP10 is dated April 6, 2013; correct?

24 A.   That's right.

25 Q.   And your BP11 is dated May 15, 2013; correct?

23

1    A.    That is correct.

2    Q.    So you did, in fact, in your complaint, list, in

3    chronological order, everything you did to exhaust your

4    administrative remedies, did you not?

5    A.    Only after -- only after I attempted to --

6    Q.    I'm not disagreeing with you, sir. You attempted to start

7    this process on November 20th, correct?

8    A.    No, I attempted to start this grievance process within 20

9    days of the incident.

10   Q.    Where, in your complaint, do you say that?

11   A.    I don't say it in the complaint.

12   Q.    Where, in Exhibits 2 and 3, in response to our motion

13   saying you didn't exhaust do you say that?

14   A.    Excuse me? Can you say that again?

15   Q.    Where, in Defendant's Exhibit Nos. 2 and 3 do you say you

16   were denied a BP8, that you tried to start the administrative

17   remedy process within the 20 days, and you were denied a BP8?

18   Where, in any of those documents, Defendant's Exhibit 1, your

19   complaint, Defendant's Exhibit 2, your response to one of our

20   dispositive motions, and Defendant's Exhibit 3? Where do you

21   say that in there?

22   A.    For the record, once the Plaintiff presents his evidence,

23   he would prove to the Court that he made every attempt to

24   exhaust his administrative remedies that were made available to

25   him, before he started the BP8, 9, 10 and 11.

24

1    THE COURT: If I may, Mr. Brown, as I understand counsel's

2  question, he is asking you, specifically, with respect to BP8,

3  in Exhibits 2 and 3, if you've mentioned anything in, either,

4  Exhibit 2 or Exhibit 3 about being denied a BP8 form?

5    THE WITNESS: No.

6    THE COURT: Can you limit your answer to that particular

7  question? So your answer is, No?

8    THE WITNESS: There's nothing, you know.

9  BY MR. THIEL:

10 Q.   Okay, and that's despite the fact that you were responding

11 to our motion, the Government's motion saying you didn't

12 exhaust; correct?

13 A.   Yeah -- let me get that again.

14 Q.   In Defendant's Exhibits Nos. 2 and 3, you're responding to

15 our motion to dismiss your complaint because you did not

16 exhaust, and the response to those motions you filed Exhibits 2

17 and 3, and in those, like you just testified, you don't say

18 anything about being denied a BP8, do you?

19 A.   No, I don't.

20   MR. THIEL: That's all I have, Your Honor.

21   THE COURT: Mr. Brown, you do have the right, at this

22 point, to offer your testimony in response to the questions

23 that were asked of you as of cross examination or you can

24 reserve your right to testify, when it is your turn to testify,

25 at the conclusion of the Defendant's case.

1       MR. BROWN: Okay.

2       THE COURT: So what is your pleasure, sir?

3       MR. BROWN: I would like to cross-examine.

4       THE COURT: Well, you don't get the chance to cross-examine

5  at this stage, you do get the right to call witnesses at the

6  appropriate time or cross-examine the Defendant's witnesses.

7       But at this stage, procedurally, since you're not

8  represented by counsel, you would have the right to offer

9  testimony, in response to the questions that were posed of you

10 by counsel, you could do that now or you can defer your

11 testimony until a later part in the proceedings today when you

12 will have the right to offer your own testimony.

13      MR. BROWN: And I can present my own case?

14      THE COURT: Yes, you can, at that time.

15      MR. BROWN: You're saying that I can call whoever I want

16 from his --

17      THE COURT: Well, depending upon who Mr. Thiel is going to

18 call next, you'll have the right to cross-examine that witness,

19 you'll have the right to question that witness.

20      MR. BROWN: Okay, so he's just putting on his case?

21      THE COURT: He's putting in his case, at this point, yes.

22      MR. BROWN: So I'll have a chance to put my case on?

23      THE COURT: Yes, you will.

24      MR. BROWN: Today?

25      THE COURT: Yes.

1     MR. THIEL: Do you want to wait then?

2     MR. BROWN: To put on my case?

3     MR. THIEL: Yes.

4     MR. BROWN: I'm given that opportunity by the Court, yeah?

5     THE COURT: Yes, I'll give you that opportunity.

6     MR. BROWN: Any other witnesses that he puts on, I get to

7  cross-examine them?

8     THE COURT: Yes, you do. You'll have your opportunity to do

9  that.

10     MR. BROWN: Okay.

11     MR. THIEL: May I, Your Honor?

12     THE COURT: Yes.

13     MR. THIEL: What's going to happen next, if you don't tell

14  your story right now, then, I'm going to call Mr. Edinger as a

15  witness and you can question him after I do, you can

16  cross-examine him, and then I'm going to call Keri Sorce, who

17  is the Administrative Remedies Clerk, then, once that's all

18  done, you get to get up there again and tell your story. Is

19  that how you want to do it?

20     THE COURT: You're not waiving anything by not testifying

21  at this stage in the proceedings, if that's what you're

22  concerned with. You do have the right, at the conclusion of the

23  Defendant's case, to put on your case, and you could come back

24  here and testify, I guess, somewhat by way of narrative, and

25  then Mr. Thiel, if he elects to, he can cross-examine you,

1  based upon what you state under oath. Do you understand that?

2      MR. BROWN: Okay. But what he's saying to me is that -- are

3  you done with me as a witness is what I want to know?

4      MR. THIEL: Yes.

5      MR. BROWN: But you were saying in reference to me putting

6  on my case or I can do that now?

7      THE COURT: You can't put on your case now, you could offer

8  testimony, in response to the questions that were asked of you,

9  if you elected to, and you could testify, right now, if you

10 want to, regarding your version of the events or you can wait

11 until the Defendants are concluded with their portion of the

12 testimony.

13     MR. BROWN: What about could I do both?

14     THE COURT: Theoretically, you can, but what we try to do

15 is we try not to let the proceedings go longer than necessary,

16 and we don't want to have an overlap, as much as possible. So

17 you're welcome to offer whatever testimony you want at this

18 point, and later on, when the case is over, you may say, I've

19 already said that, so it's not necessary for me to say it

20 again. It's up to you

21     MR. BROWN: I also have the opportunity to basically

22 like -- if there's some points in my case that I want to

23 reiterate or show up or make reference to, but I'm not going to

24 be redundant with my defense or my case or putting forward my

25 case.

1    But for the record, I'd like to, you know, if I'm not

2 taking too much of the Court's time, I would like to put forth

3 my issues at this time, if I can testify to that.

4    THE COURT: You can, you can do that right now if you want.

5    MR. BROWN: Because I don't know --

6    MR. THIEL: Do you need any of these things? Do you want me

7 to bring them up to you?

8    MR. BROWN: I can get my own stuff.

9    THE COURT: You may go back and look to see what you need.

10    MR. BROWN: I'm not going to take too much of the Court's

11 time with my testimony. I just wanted to, more or less, brief

12 the Court on some matters, in reference to his claims, because

13 that's what they are.

14    First and foremost, the Defense counselor stated for the

15 record that I had 20 days to file my BP8, and I wanted to say,

16 for the record, that I attempted, you know, to get the BP8 from

17 Counselor Edinger. This was within the 20 days really, shortly

18 after the incident occurred on July 28, 2012, and I tried to

19 get a BP8 from him.

20    For the record, he asked me what I needed it for, and I

21 told him it's for the systematic retaliation caused by him

22 concerning this assault, and he denied me, he told me, No, he

23 flat out, No, and walked away from the cell door.

24    I mean, he was -- and from that point on, I know, in order

25 to go to the BP9, you have to first exhaust the BP8, but

1  because I was denied a BP8 for this counselor for this

2  incident, I filed a Sensitive 10, I said -- here's a copy of it

3  -- Sensitive 10 to the regional office concerning this same

4  matter.

5      THE COURT: Do you want to mark that as an exhibit?

6      MR. BROWN: It can be an exhibit. It's dated September 7,

7  2012.

8      THE COURT: Okay, just give us a moment. Stop testifying

9  for one moment, we will have the court reporter mark it.

10     MR. THIEL: I have copies.

11     THE COURT: Counsel will provide us with copies, and we

12 will have the court reporter mark that document as an exhibit.

13 Just give us a moment.

14     (At this time Plaintiff's Exhibit No. 1 was marked for

15       identification.)

16     MR. BROWN: I filed this Sensitive 10 after being denied a

17 BP8 by Counselor Edinger on September 7, 2012.

18     For the record, the regional office rejected this

19 Sensitive 10 and told me that I needed to start at the

20 institutional level first, and because I was denied a BP8 by

21 Counselor Edinger, the only --

22     THE COURT: Just so I have it clear, would you show me

23 where in the document that's labeled Plaintiff's Exhibit No. 1

24 and then titled Sensitive 10, where in there does it state that

25 Mr. Edinger denied you a BP8?

30

1    MR. BROWN: No, it doesn't say that, it doesn't say that at
2  all.

3    THE COURT: All right.

4    MR. BROWN: I'm very familiar with the PLRA and the prison
5  grievance system, and I know that you must begin to exhaust
6  your administrative remedies at a BP8 level, before you can
7  move on to a BP9.

8    Although, this document doesn't state that I was denied a
9  BP8 by this counselor, this was the remedy that I chose, at the
10 time, after being denied a BP8 by Counselor Edinger. And it was
11 rejected by the region. He told me I needed to begin at the
12 institution level first and foremost.

13   Because I was denied a BP8 by Counselor Edinger, I then
14 filed a Sensitive 9 and I gave this to Counselor Edinger, I
15 gave it to Counselor Edinger to give to the warden.

16   THE COURT: Are you referring to another document now?

17   MR. BROWN: This is another document, but it's not in the
18 BOP retrieval system because he didn't turn this in, either.

19   THE COURT: Mr. Thiel, do you have copies of those?

20   MR. THIEL: Is that the September 23, 2012 filing that says
21 Sensitive 9 on top?

22   MR. BROWN: Sensitive 9.

23   MR. THIEL: That will be Exhibit No. 2, Plaintiff's?

24   THE COURT: Yes.

25   (At this time Plaintiff's Exhibit No. 2 was marked for

1    identification.)

2    THE COURT: Okay, now, we're referring to Plaintiff's

3    Exhibit No. 2, and it's entitled Sensitive 9, it's dated

4    September 23, 2012, right?

5    MR. BROWN: That is correct.

6    THE COURT: Does this document refer to any denial by --

7    MR. BROWN: Counselor Edinger.

8    THE COURT: -- Counselor Edinger, whether you were denied

9    the BP8 form.

10    MR. BROWN: No, it does not. And after given this document,

11    filed this document, gave him this document, he gave it to the

12    warden. He didn't -- it's not in the retrieval system, he

13    didn't turn it in, you know.

14    But I wanted to say for the record that the Sensitive 10

15    that I filed to the regional office concerning the incident

16    that happened on July 28, 2012, this is document in the BOP's

17    retrieval system, but the Sensitive 10 is not. I mean, the

18    Sensitive 9 that I gave to Counselor Edinger is not, concerning

19    this same incident, in reference to this misconduct.

20    When I didn't get a response, I didn't get a response

21    concerning this matter, so what I did next, once I didn't get a

22    response, what I did next was I made a copy of this Sensitive

23    9. I took a copy of the Sensitive 9 that I didn't get a

24    response to, and I attached it with a copy of the BP10 form to

25    move to the regional level, and it's dated October 23, 2012.

1      THE COURT: And that's -- you're referring to another

2   exhibit?

3      MR. BROWN: Another exhibit.

4      THE COURT: Do you have copies of those, Mr. Thiel?

5      MR. THIEL: I do.

6      THE COURT: We will mark that Plaintiff's Exhibit No. 3.

7   Just give us a moment.

8      THE COURT: You're making reference to Plaintiff's Exhibit

9   No. 3, which is a two-page document or a one-page document?

10      MR. BROWN: One-page document.

11      THE COURT: That's dated October 23, 2012?

12      MR. BROWN: Yes.

13      THE COURT: Up above it, it has Remedy I.D. No. 710674-R1,

14   is that correct

15      MR. BROWN: Yes.

16      (At this time Plaintiff's Exhibit No. 3 was marked for

17       identification.)

18      MR. BROWN: It was put into the BOP's retrieval --

19   grievance retrieval system, for the record. Although, this

20   document, as well, does not refer to me being denied a BP8 by

21   Counselor Edinger, the Defendant.

22      THE COURT: The sensitive documents, it bypasses the prison

23   system where you're incarcerated, correct, and you go to the

24   next level?

25      MR. BROWN: Yes.

1          THE COURT: So at that point in time, if you were denied

2     the BP8 form by Counselor Edinger, why wouldn't you have stated

3     it so, so that the regional office would know what your

4     position was?

5          MR. BROWN: Well, because, at the time, I had no -- you

6     know, all of these documents that were done were out of

7     response to my denial by Counselor Edinger for the BP8. And I'm

8     very well aware, I'm very well aware, since I've been coming

9     into the Federal system, that you have to start at the BP8

10    level, but once I was denied that, I'm not -- well, I'm well

11    aware that you can't go anywhere without the BP8, unless you

12    are denied that.

13         I mean, although, I didn't put any notation on anything

14    that I was refused this document by Counselor Edinger or --

15         THE COURT: But you made reference, in later filings, that

16    you were denied, specifically, forms BP9, 10 and 11, I believe,

17    but you did not make reference to being denied form BP8, which

18    initiates the process; am I correct?

19         MR. BROWN: That is correct.

20         THE COURT: And without a BP8, you can't go to BP9, 10, 11,

21    and so on?

22         MR. BROWN: You can't go nowhere. But I understand the

23    process, you know, this is a two-pronged -- you know, you can

24    look at it this way and that way --

25         THE COURT: You've made it abundantly clear to me that you

34

1 fully understand, procedurally, what the course of action is,

2 and that you were aware of all of your rights, and that you

3 knew what you were doing, you know, being aware of how the

4 system works, I get all of that, and I acknowledge that.

5      But the question is, to initiate the process, you're not

6 claiming that you were denied the BP8 form by Counselor

7 Edinger, are you?

8      MR. BROWN: To begin?

9      THE COURT: Yes.

10      MR. BROWN: Yes.

11      THE COURT:  You are -- in any of the filings that you made

12 you did not.

13      MR. BROWN: In any of the forms, it doesn't state it, but

14 this is what I'm saying.

15      Listen, my response, the responses that I gave in

16 reference to the grievances that I filed, I'm not saying that

17 anyone should assume anything, I'm not saying that, but to say

18 that -- to start with a Sensitive 10 and a Sensitive 9 and all

19 these other forms, but you don't stop with the BP8, when you're

20 well aware that a BP8 has to begin the process, you know, I'm

21 using every available remedy, you know, that is being given to

22 me -- that is being made available to me.

23      When the BP8 is not being made available to me, then, I

24 can't file the BP8 because I don't understand the grievance

25 system. The only way I can file the BP8 is only if it's made

1  available to me.

2      THE COURT: In terms of what my obligation is, in this

3  phase of the case, as you know, I'm required to hold this

4  evidentiary hearing and to make findings and make a report and

5  recommendation upon which Judge Rambo will either adopt or

6  reject or adopt in part or reject in part and so on, you

7  understand that?

8      MR. BROWN: Yes.

9      THE COURT: So the issue is, in this event or this issue

10 you claim happened was on July 28, 2012; right?

11     MR. BROWN: Yes.

12     THE COURT: And we have calculated the 20 days for you to

13 file the BP8 as August 17, 2012; is that right?

14     MR. BROWN: Yes.

15     THE COURT: So what happened between July 28, 2012 and

16 August 17, 2012 where you were denied a BP8 form?

17     MR. BROWN: Yes.

18     THE COURT: Okay, tell me how that happened.

19     MR. BROWN: This was, like, almost as soon as I seen him

20 walking the tier, after the incident occurred that weekend, I

21 told him, you know, I said I need a BP8. He said, What do you

22 need it for? Which is customary. I told him I'm going to file a

23 systematic retaliation on him because of the incident that took

24 place. You caused it.

25     He looked at me, rolled his eyes and walked away from the

1 door. And huffed and looked at me like, you know --

2 THE COURT: How many times did you ask him for the BP8

3 form?

4 MR. BROWN: I don't know if I asked him on multiple

5 occasions or numerous occasions, I asked him that one time, and

6 the response that I got was a resounding, you know, No. You

7 know, like, no. And he just looked like he had some type of --

8 THE COURT: What date did you ask him for the form?

9 MR. BROWN: This happened immediately after -- the first

10 time I seen it. The first time that I seen him after the

11 incident, it may have been, just to play it safe, I'm going to

12 say within the 20 days, but it was really that following week,

13 in actuality.

14 The incident happened on a Saturday, it happened on a

15 Saturday, and when he came back to work, whenever I saw him

16 walking on the tier, I asked him that one time, and he looked

17 at me, man, like, you know, You've got to be kidding me. This

18 is the way he looked at me.

19 THE COURT: Okay, so you asked him once?

20 MR. BROWN: I asked him that one time.

21 THE COURT: And you say, to play it safe, within 20 days,

22 but the reality of it, it was within a week.

23 MR. BROWN: First time I saw him coming back on the tier.

24 THE COURT: You're saying that he flatly said, No, correct?

25 MR. BROWN: It was a resounding, No.

37

1    THE COURT: Now, when you had the opportunity to make

2 further filings and you got those forms, do you agree that

3 nowhere in those filings did you reference that one-time

4 conversation or one-time request of Counselor Edinger to

5 provide you with a BP8 form, and you were denied?

6    MR. BROWN: Never stated it in any other forms that I

7 filed, never stated that in any other forms that I filed.

8    THE COURT: All right. Do you have any other testimony you

9 want to provide?

10    MR. BROWN: Other testimony, in reference to the BP

11 grievance process, is the fact that, although, in the rule

12 book, it does state that you must file a BP8 within the 20

13 days. I have a year to exhaust my administrative remedies, so

14 according to the PLRA, you know, I have a year to file

15 anything.

16    But just to show the Court that, before I filed my BP8, I

17 took every -- all the other measures, I even asked, you know,

18 the Defendant for the grievance, and he denied me. Here's the

19 other form that states that.

20    THE COURT: Those are the ones that you made reference to

21 as Exhibit 1, 2 and 3. And will you agree with me that all

22 three of those exhibits were filed after August 17, 2012?

23    MR. BROWN: August 17, 2012.

24    THE COURT: They were all filed more than 20 days than the

25 BP8, is that right?

38

1        MR. BROWN: Sure, I can't deny that.

2        THE COURT: So even if we were to construe Exhibits 1, 2

3    and 3 as a BP8 form, it was a late filing anyway, is that right

4    or not?

5        MR. BROWN: You say -- excuse me. I don't know.

6        THE COURT: If we were to say, for the sake of argument,

7    that Exhibit 1, Exhibit 2 or Exhibit 3 stands in the place of a

8    formal BP8, if either one of these documents stands in the

9    place of a BP8 form, they were filed beyond the 20-day period,

10   correct?

11       MR. BROWN: Correct. But --

12       THE COURT: Go ahead, you're free to testify.

13       MR. BROWN: I just wanted to state for the record that

14   although I was late with the quote, unquote, you know, I wasn't

15   late, I was just denied, it wasn't made available to me. These

16   forms were filed after the 20 days, only because the BP8 wasn't

17   made available to me, you know. We keep getting around to the

18   fact that we didn't file nothing before, you know, the 20

19   days -- within the 20 days -- and technically, you have a year

20   to exhaust your remedies, you know, technically, you have a

21   year to exhaust your remedies, under the Statute of Limitations

22   under PLRA.

23       But at the same time, these forms, I only thought to be

24   needed after I was denied a BP8 within the 20 days by Counselor

25   Edinger. That's the only reason these forms were used

1  afterwards. You know, my sense of logic and someone else's may

2  not correlate, but for the record, I did everything that I

3  could, I took every -- pursued every -- that I could, at the

4  time. There's nothing else that I could do.

5      I could have dotted my I's and crossed my T's, but, you

6  know, my effort was there, my effort was there and I tried,

7  under the --

8      THE COURT: Let me just go back, if I can, to clarify one

9  point in my mind.

10      When Mr. Thiel asked you some questions regarding the BP8,

11  which was dated November the 20th, 2012 right, eventually, you

12  got a copy of a form BP8?

13      MR. BROWN: Yes.

14      THE COURT: When did you receive that form?

15      MR. BROWN: On the date that he signed it.

16      THE COURT: November 20th?

17      MR. BROWN: Yes.

18      THE COURT: Who provided it to you?

19      MR. BROWN: He signed it and he dated it, Counselor

20  Edinger. That's the signature right here(indicating).

21      THE COURT: Okay. So he didn't refuse to provide you with

22  this form at that time?

23      MR. BROWN: But there's another part to that, and that's

24  what I wanted to put forth in my case, and I will have a chance

25  to put forth my case, but I wanted to, more or less, add for

1    the record, you know, these documents Exhibit 1, 2 and 3, to

2    more or less add to my testimony, you know, because I don't

3    want things to look as though it's one-sided, as he's trying to

4    make it appear.

5         THE COURT: I understand, I'll afford you that opportunity

6    during your case. Is there anything else you want to say at

7    this point?

8         MR. BROWN: Not at this time.

9         THE COURT: Mr. Thiel, do you have any re-cross

10   examination?

11        MR. THIEL: I do, Your Honor.

12        THE COURT: Okay.

13                        CROSS EXAMINATION

14   BY MR. THIEL:

15   Q.   Mr. Brown, your complaint was filed after Plaintiff's

16   Exhibits 1, 2 and 3, correct?

17   A.   Yes.

18   Q.   And in your complaint, as we went over before, on Page 2

19   of Defendant's Exhibit 1, it asked you what you did to exhaust,

20   did it not?

21   A.   Yes.

22   Q.   And nowhere in your complaint did you bring up the fact

23   that you filed Plaintiff's Exhibits Nos. 1, 2 or 3, did you?

24   A.   Run that by me again.

25   Q.   Nowhere in Defendant's Exhibit 1, your complaint, on Page

41

1  2, where it asks you what you did to exhaust your

2  administrative remedies, did you include Plaintiff's Exhibits

3  1, 2 and 3? Did you?

4  A.   No. Well, technically -- well, I don't know about that,

5  because I told you I tried. Although, I did not present these

6  documents, I tried, you know.

7  Q.   And my question is simply that. You had the opportunity to

8  use these as exhibits at that time in your complaint, and you

9  didn't, did you?

10 A.   No, I didn't use these documents, no.

11 Q.   And despite the fact that your complaint specifically asks

12 what you did to exhaust, so you had every opportunity to

13 present all the evidence that you had, correct, and you didn't

14 present these?

15 A.   No. Excuse me, let me state for the record that I have a

16 lot of records, I have a lot of copies of grievances and stuff

17 like that, and all of my legal copy is not, maybe, in the

18 cell -- a lot of it is in storage and stuff like that, this is

19 no excuse or anything of that nature. I just sent the documents

20 to the Court concerning the exhaustion on Exhibit 1 that I had

21 in my possession of.

22      These documents, Exhibits 1, 2 and 3 that I just showed to

23 the Court, were documents that I found after I filed this

24 complaint. But, although, I knew I filed them, I didn't have

25 them at the time -- I only sent the grievances that I had

1  exhausted at the time and that was in my possession.

2  Q.   Okay, so at the time you filed your complaint, you're not

3  telling the Court you knew you had these documents, but they

4  weren't available to you, right?

5  A.   No, they wasn't in my possession. They were available to

6  me, but they wasn't in my possession when I filed it.

7  Q.   So you still had available to you, when filing your

8  complaint, to write out an explanation as to, I have different

9  documents, this is what I did to exhaust, but I don't have

10 those documents now.

11 A.   I mean -- and truthfully speaking, truthfully speaking,

12 because I am under oath, I literally forgot about these

13 documents that I had filed before I even filed the complaint.

14 I did, I honestly did, because I knew I did them, because I

15 didn't know that I had to make copies of them, and I went

16 through my own property.

17      THE COURT: So that the record is clear, you're referring

18 to Plaintiff's Exhibits 1, 2 and 3.

19      MR. BROWN: Yeah, and I forgot -- man, I did everything, I

20 did everything, I did everything I could, you know, once he

21 denied me.

22 BY MR. THIEL:

23 Q.   So let's go back to Defendant's Exhibit 2 and 3, documents

24 filed by you in response to our dispositive motion claiming you

25 did not exhaust your administrative remedies, okay?

43

1  A.    Um-hum.

2  Q.    Again, you had the opportunity in there, because we were

3  arguing, we were setting forth before the Court you did not

4  exhaust your administrative remedies, and you had the

5  opportunity there to put everything in there that you did to

6  exhaust, and despite that fact, you do not mention in either

7  documents -- or Defendant's Exhibits 2 or 3 anything about

8  these exhibits, 1, 2, and 3, do you?

9  A.    No.

10 Q.    And finally, Exhibit No. 3, which you claim is the October

11 31 -- the rejection notice. Have you got that?

12 A.    No, I don't have it.

13 Q.    Your Exhibit No. 3.

14 A.    Here it is.

15 Q.    Turn to Page 2, which is your October 23, 2012 -- your

16 alleged October 23, 2012 filing. There's nothing on this

17 document whatsoever indicating that it was received by the BOP,

18 is there?

19 A.    You're talking about the October the 23rd?

20 Q.    Yes.

21 A.    This document?

22 Q.    Yes, same one. There's nothing on here indicating that it

23 was received by the BOP, is there?

24 A.    On the document?

25 Q.    Yes, on this, on this(indicating). In fact, you testified

1  earlier, did you not, when you presented this, you took and you

2  wrote that administrative remedy number on top, correct?

3  A.    Yes, of course.

4  Q.    And you connected it to this, right?

5  A.    That's it.

6  Q.    You didn't receive this back from the BOP like this, did

7  you?

8  A.    No. This is a copy of it. I received the original

9  document, but I don't have the original document. I did receive

10  the original document back from them. This is a copy of the

11  original document.

12  Q.    Tell me something. You've been doing this since 2002,

13  filing administrative remedies, right?

14  A.    Correct.

15  Q.    And when you receive something back from the BOP, do they

16  not, in this lower right-hand corner -- let's take a look at

17  Exhibit No. 2, for instance, the warden or regional director,

18  and underneath that, it has a case number. When you receive

19  those back, don't they have written in there the fact -- strike

20  that.

21        Don't they have written in there the administrative remedy

22  number that was assigned to that matter?

23  A.    Yes.

24  Q.    And none of your documents have them on there, do they?

25  A.    No.

1  Q.   Also, when they receive them and you get them back, aren't

2  they date-stamped?

3  A.   Yes.

4  Q.   And none of these documents are date-stamped, are they?

5  A.   These are copies, before they were even sent to their

6  destination.

7       MR. THIEL: That's all I have, Your Honor.

8       THE COURT: I just have a final few questions to ask you.

9  Plaintiff's Exhibits 1, 2 and 3. Did you have these forms in

10 your possession, before you completed them, or did you receive

11 them from someone else?

12      MR. BROWN: I don't know if I had these in my possession,

13 at the time, I don't know, before I filed them or not. During

14 this time, because of -- although, he didn't make the BP8

15 available to me -- I'm not certain, I'm not certain. But this

16 is during the time when I probably would have had extra

17 grievances of my own. May have. I'm not certain.

18      THE COURT: In your legal papers that you have with you and

19 that you've had with you at the prison, at the time, did you

20 have a BP8 form upon which you could set forth your grievance?

21      MR. BROWN: It was impossible, no. You can't get a -- you

22 can't get a BP8, and the only place you can get a BP8 is from a

23 counselor. He's the only one that gives you one.

24      THE COURT: Do I understand your testimony that on November

25 the 20th, 2012, you asked Counselor Edinger for a BP8 form and

**46**

1  he provided it to you?

2        MR. BROWN: Yes.

3        THE COURT: Is it also true that, on that date, you

4  completed the handwritten portion in your own handwriting and

5  set forth your complaint, is that right?

6        MR. BROWN: In reference to the BP8?

7        THE COURT: Yes.

8        MR. BROWN: Yes.

9        THE COURT: And you then -- I'm just trying to get it,

10  procedurally, how it occurs in the chain. Then you gave the

11  form to Counselor Edinger, is that correct?

12        MR. BROWN: Yes, I submitted it to him.

13        THE COURT: Then he signed it, is that right?

14        MR. BROWN: I don't know if he -- when he -- him, in

15  particular, he doesn't just date it, he signs it when he gives

16  it to you. So the form says November the 20th, but I gave it to

17  him after November the 20th because I had to get a copy of it,

18  of the document, before I even gave it to him.

19        THE COURT: He gave you a copy of the document?

20        MR. BROWN: No.

21        THE COURT: You got it, yourself?

22        MR. BROWN: Yeah, I have to, that ain't gonna happen.

23        THE COURT: But you agree that he provided you with the

24  form for your completion, is that right?

25        MR. BROWN: Yes, he provided me with the form.

47

1        THE COURT: You'll agree he also signed it when you

2   completed it; correct?

3        MR. BROWN: He signs it -- once he dates it, he signs it

4   when he gives it to you, he give it to you blank.

5        THE COURT: So it's dated 11/20/2012 -- whose handwriting

6   is that?

7        MR. BROWN: Counselor Edinger's.

8        THE COURT: Where it says, staff, and there's a signature.

9   Whose signature is that?

10        MR. BROWN: His signature.

11        THE COURT: Do I agree -- or do I understand, from your

12   testimony, that on November 20th, 2012, Counselor Edinger

13   signed this document, is that right?

14        MR. BROWN: Yeah, he gave it to me.

15        THE COURT: That's the date that it says, Form to inmate,

16   which means that he gave you that form on that date.

17        MR. BROWN: Yes.

18        THE COURT: Could we agree that's the date you received the

19   form?

20        MR. BROWN: That's the date I received the form.

21        THE COURT: Is that the date that you completed the form?

22        MR. BROWN: I don't know exactly when I completed the form.

23   It may have taken me a day to do the form, but I know that I

24   sent it to get copies, before I gave it to him.

25        THE COURT: Okay. And when you received your copy back, did

48

1  it have his signature on it?

2      MR. BROWN: Yes.

3      THE COURT: Okay. That's all I have. Anything further?

4      MR. THIEL: No, thank you.

5      THE COURT: Do you have anything further to say, Mr. Brown?

6      MR. BROWN: No, I just want to put my case on, too.

7      THE COURT: You'll have that the opportunity. Mr. Thiel, do

8  you want to call your next witness.

9      MR. BROWN: Should I leave these here?

10      THE COURT: You can keep them there, you can take them with

11  you, if you'd like. Whatever your pleasure.

12      MR. BROWN: If he's going to have other people here --

13      THE COURT: Yes, I'm saying you could take them back to

14  counsel table, if you'd like.

15      MR. THIEL: We would like to call Mr. Matt Edinger.

16  M A T T H E W     E D I N G E R   IS CALLED, AND HAVING BEEN

17  DULY SWORN, TESTIFIED AS FOLLOWS:

18      THE CLERK: Please state your name and spell it for the

19  record.

20      THE WITNESS: Matthew David Edinger. M-A-T-T-H-E-W,

21  D-A-V-I-D, E-D-I-N-G-E-R.

22      THE CLERK: Thank you. You may be seated.

23                    DIRECT EXAMINATION

24  BY MR. THIEL:

25  Q.   How are you currently employed, sir?

49

1  A.    I am currently employed as a counselor at United States

2  Penitentiary, Lewisburg.

3  Q.    How long have you been employed as a counselor at USP

4  Lewisburg?

5  A.    Approximately, sometime in July of 2010.

6  Q.    How long have you been with the BOP, in total?

7  A.    March 17th of this year will be 25 years.

8  Q.    In fact, you're going to retire at the end of --

9  A.    End of this year.

10  Q.    Congratulations. So in 2012, you were Mr. Brown's unit

11  counselor; correct?

12  A.    Correct.

13  Q.    What are your duties and responsibilities as a unit

14  counselor at BOP Lewisburg?

15  A.    As counselor, I'm in control of sanitation and supplies in

16  the unit. I also take care of the individual needs of the

17  inmates and staff while I'm there.

18      I make sure there's paint in the unit, if we need to paint

19  things in the unit, clothing for the inmates in the unit,

20  supplies, such as paper, pens, envelopes, the BP8's that we

21  have been talking about, BP9's, 10's and 11's. I walk the

22  ranges, probably, twice a week to make sure they have those

23  individuals needs.

24  Q.    You know Mr. Brown; correct?

25  A.    I do.

1  Q.    You're familiar with the fact, are you not, that Mr. Brown

2  filed a lawsuit we're here about today claiming that you

3  retaliated against him on July 28, 2012 by making him share a

4  cell with somebody that he was not compatible with.

5  A.    Correct.

6  Q.    You also know, and you were here when the Court instructed

7  us this morning, that today's proceeding is only to determine

8  whether or not Mr. Brown exhausted his administrative remedies

9  prior to filing this lawsuit; correct?

10  A.    Correct.

11  Q.    It's not about the merits, at all; correct?

12  A.    Correct.

13  Q.    Because we are sitting here today and we have discussed

14  this case before and because you were served with a lot of the

15  documents, you're aware of the fact that Mr. Brown claims that

16  you denied him administrative remedy forms; correct?

17  A.    Correct.

18  Q.    Did you ever deny him administrative remedy forms?

19  A.    No.

20  Q.    Generally speaking, what role did you have -- I think you

21  answered this, but I want to make sure it's clear -- as a unit

22  counselor, in the overall administrative remedy process with

23  respect to inmates on your unit like Mr. Brown?

24  A.    If Mr. Brown wanted a BP8, he would get ahold of me for a

25  BP8 or BP9 or BP10 or BP11. You start the process off, though,

51

1  with a BP8.

2      What we do as the informal resolution part of it, we would

3  discuss, him and myself, we would discuss what the issues

4  actually were.

5  Q.   Now, as a unit counselor, is it important that you build a

6  relationship with those people, inmates like Mr. Brown, that

7  are on your unit?

8  A.   Yes.

9  Q.   So can you please convey to the Court or talk to the

10  Court, discuss with the Court how you feel about the informal

11  BP8 process itself and the relationship you have to build with

12  the inmates?

13  A.   Sure. Part of the BP8 process and being a counselor,

14  you're like a father figure to them, you have to get your point

15  across that we have to work together, if we're going to get

16  anything done.

17      Most of these guys that come into the Special Management

18  Unit don't have phones, don't have commissary, the only thing

19  they have are their writing skills to get whatever they need.

20  So when they're discussing with me the BP8 process, we have to

21  come to an understanding to try to work something out. Due to

22  the fact he was complaining against staff, which he is in this

23  BP8, there's nothing I really can do to help him, except send

24  that on its way. It has to go to the Captain because the

25  Captain actually handles the BP8 on staff.

52

1  Q.   So are there instances when an inmate comes up to you and

2  says, you know, I have a problem here with a staff member, I'd

3  like a BP8. Are you telling the Court when that inmate comes up

4  to you, you discuss the overall situation with them?

5  A.   We discuss the situation, and if there's something I can

6  do, let's say he claims that he was assaulted by staff. There's

7  really nothing, at that point, I can do. But if he says that

8  they refuse to give me a shower or they refuse to give me

9  clothing, that's something him and I can work out.

10       I can say to him, Mr. Brown, what piece of clothing are

11  you requesting? Is there something that you and I can do? And

12  then we informally resolve it, and that's what the BP8 issue

13  does.

14  Q.   Thank you. So in July of 2012, if Inmate Brown or any

15  other inmate on your unit had a problem, they would come to you

16  to get the BP8?

17  A.   Yes.

18       MR. THIEL: May I approach, Your Honor?

19       THE COURT: You may.

20       MR. THIEL: Let the record reflect I'm going to ask the

21  witness to look at what was marked Defendant's Exhibit 8.

22  BY MR. THIEL:

23  Q.   Now, the BP8 is also referred to as informal resolution

24  process.

25  A.   Correct.

53

1 Q.   So if we talk about that, it's the same thing as the BP8?

2 A.   Right.

3 Q.   Could you please take a moment and review what is

4 previously marked Defendant's Exhibit 8? Can you please tell

5 the Court what Defendant's Exhibit 8 is, please?

6 A.   That is the BP8, the log that I keep in my office.

7 Q.   This is the first time we've heard about this. Can you

8 tell the Court what a BP8 log is and why you keep it?

9 A.   Sure. When I'm walking down range and I'm handing out

10 BP8's, 9's, 10's and 11's, which is a regular issue, I will

11 take a BP8 out, if somebody requests it, and I will date it and

12 sign it and give them the BP8, and we will discuss the BP8

13 issue. If it's something we can informally resolve, we will

14 work that out, if we cannot, we get it, and then I would get it

15 back and log it in this book.

16 Q.   So correct me if I'm wrong, you give an inmate the BP8,

17 you discuss it, you can't work it out, then, you take that BP8

18 that you've already signed and dated --

19 A.   Right.

20 Q.   -- and you log it into this book?

21 A.   Correct.

22 Q.   Which means you aren't able to resolve it?

23 A.   Right.

24 Q.   Now, correct me if I'm wrong, but this log itself deals

25 with the time frame beginning on July 23rd, 2012, which is on

1  Page 2, I believe.

2  A.    Yes.

3  Q.    And goes to December 7, 2012, would that be correct?

4  A.    Yes.

5  Q.    And can you please focus your attention on Page 2 of

6  Defendant's Exhibit 8.

7      Am I correct that this page deals with BP8 forms that were

8  provided to various inmates at USP Lewisburg in your unit with

9  a time frame beginning July 23rd, 2012 to September 12, 2012?

10  A.    Correct.

11  Q.    Was Mr. Brown provided any BP8 forms between July 23, 2012

12  and September 12, 2012?

13  A.    Yes.

14  Q.    If you look at the very top of Defendant's Exhibit 8, Page

15  2, dated July 23, Mr. Brown was provided with a BP8; correct?

16  A.    That is correct.

17  Q.    And the staff assigned was you; correct?

18  A.    Correct.

19  Q.    And why were you assigned to that, if you recall?

20  A.    If I recall, it's about gloves. I think what he was asking

21  was, the food service trays, when they're being handed out, he

22  wanted staff to wear rubber gloves to hand him the food service

23  trays. We have set forth in policy that, since we're not

24  handling the food and only handling the trays, we do not need

25  to wear rubber gloves.

1    That was something that had been answered before, and I

2  knew the answer, so I re-used the answer in the BP8 issue.

3  Q.    July 23, 2012 was five days before the alleged July 28

4  incident that is the subject of this lawsuit; correct?

5  A.    Correct.

6  Q.    Now, if you look down a little bit on August 2, was Mr.

7  Brown provided a BP8 form?

8  A.    Yes, he was.

9  Q.    August 2, 2012, that would be, approximately, five days

10  after the July 28 incident that is the subject of this lawsuit;

11  correct?

12  A.    Correct.

13  Q.    You were here for Mr. Brown's testimony; correct?

14  A.    Correct.

15  Q.    Did he not tell this Court that he was not able to get a

16  BP8 from you, after the July 28th incident, prior to -- within

17  that 20-day period?

18  A.    That is correct.

19  Q.    And this exhibit shows that that testimony was false, does

20  it not?

21  A.    Yes.

22  Q.    Can you now turn to Page 1 of Defendant's Exhibit 8.

23  Though there's no date on the very top of that, because Page 2

24  ends at September 12 of 2012, we know that the exhibits on the

25  first page had to start either on that date or sometime after;

1  correct?

2  A.   Correct.

3  Q.   They went down to December 7, 2012; correct?

4  A.   Correct.

5  Q.   Can you turn to Defendant's Exhibit 1 in that book,

6  please?

7  A.   (Witness complied.)

8  Q.   First of all, he was provided an administrative remedy on

9  this page, also, correct? And we don't have a date, but it was

10 sometime -- this Exhibit No. 8 -- it was sometime between

11 September 12, 2012 and October 25th, 2012; correct?

12 A.   Correct.

13 Q.   Now, I'm sorry, back to Exhibit No. 1. Can you please turn

14 to Page 11 of what's been marked as Exhibit No. 1? Are you

15 there, sir?

16 A.   Yes.

17 Q.   And this, sir, I will represent to you, is the November

18 20th, 2012 BP8 that Mr. Brown attached to his complaint and

19 indicated this is how he started the administrative remedy

20 process, okay?

21 A.   Yes.

22 Q.   In his complaint, and we have heard testimony so I won't

23 go through it all again -- he said that he submitted these, but

24 he was never provided a response to them. Do you remember that

25 testimony?

1  A.   Yes.

2  Q.   And, in fact, that's what he says in his complaint on Page

3  2, Defendant's Exhibit 1.

4       Was this November 20th, 2012 BP8 ever presented to you or

5  the BOP? And you could look at Defendant's Exhibit 8, the log

6  form, and, in particular, if you look at Page 1 of Defendant's

7  Exhibit 8, on the first page, it covers a period, if you look

8  down, there's a November 14th date, and then at the end,

9  there's a December 7 date; correct?

10 A.   Correct.

11 Q.   He testified, in response to the Judge's question, that he

12 filed this -- he wasn't sure if it was on the 20th, the same

13 day, because he had to get copies made, but it was a day or two

14 after that he filed that; correct?

15 A.   Correct.

16 Q.   That's not listed in here anywhere, is it?

17 A.   No, sir.

18 Q.   If he gave that to you, it would be in here, would it not?

19 A.   Yes, sir.

20 Q.   This BP8 that he says -- the November 20th BP8 he says he

21 submitted to file his administrative remedies, he would have

22 needed to file that within 20 days of the July 28, 2012

23 incident; correct?

24 A.   Correct.

25 Q.   Which we have already established would have been about

58

1  August 17th of 2012; correct?

2  A.    Correct.

3  Q.    And so even if he submitted this, as he states he did to

4  start the administrative remedy process, it would have been

5  denied and rejected, because it was filed more than three

6  months late; correct?

7  A.    That is correct.

8  Q.    You've already answered this, I believe, but inmates like

9  Mr. Brown would come to you to get their BP9's, 10's, 11's;

10  correct?

11  A.    That is correct.

12  Q.    How long have you been working at BOP, sir?

13  A.    It will be 25 years May 17th of this year.

14  Q.    Are you used to inmates filing grievances against you?

15  A.    I'm sure there's been some, but there's not been many.

16  Q.    When an inmate files a grievance against you, what do you

17  do with it? Let's say a BP8?

18  A.    BP8, there would be no reason for me to deny him the BP8,

19  even if it was on myself, because my word is the only thing

20  that saves us from further problems down the road. So if I'm a

21  counselor that is not handing out BP8's and my word is no good,

22  everybody knows that in the unit, then, all hell can break

23  loose, at any given time.

24        And you would want to come to work and have a quiet shift

25  than come to work and have a wild shift.

59

1  Q.   So, sir, you've been sitting here the whole day, and I

2  know you've said this before, but I want it make it abundantly

3  clear, did you ever deny this inmate, Mr. Brown, a BP8, and in

4  particular, in July of 2012?

5  A.   No.

6  Q.   Did you deny him any BP9's, 10's or 11's?

7  A.   No, because once you give him the BP8, why would you deny

8  him the 9's, 10's and 11's?

9       MR. THIEL: Thank you. That's all I have.

10       THE COURT: Mr. Brown, you have an opportunity to

11  cross-examine. Before we do that, I want to see if our court

12  reporter needs a break. Okay, you may proceed.

13                    CROSS EXAMINATION

14  BY MR. BROWN:

15  Q.   Good morning. Mr. Edinger, you recall the date of the

16  incident July the 28th, 2012 between Plaintiff Joseph Brown and

17  his cellmate at the time?

18  A.   I don't recall that date.

19  Q.   Do you recall the incident that occurred during that time?

20  A.   Vaguely.

21  Q.   After that incident occurred, do you recall when the

22  Plaintiff Joseph Brown asked you for a BP8 grievance in

23  reference to that complaint -- I mean, to that incident?

24  A.   The only one I remember would be this one here that is

25  marked November 20th, 2012.

60

1  Q.   Must I remind you that you're under oath.

2  A.   Yes.

3  Q.   Yes. Mr. Edinger, do you recall certain things that

4  surrounded that incident that occurred on July the 28, 2012?

5  A.   No, I do not.

6  Q.   Again, Counselor Edinger -- well, Defendant Edinger, do

7  you recall when the Plaintiff Joseph Brown asked you for a BP8

8  in the month of September 2012?

9  A.   No, I do not.

10 Q.   Again, do you have any recollection, at all, Counselor

11 Edinger, of the Plaintiff filing any administrative remedies

12 concerning this incident with you that occurred on July the

13 28th, 2012?

14 A.   Are you asking, did I give you any other remedy appeals?

15 Q.   No, what I asked was, do you recall the Plaintiff filing

16 any administrative remedies with you concerning this incident

17 that occurred July the 28th, 2012?

18 A.   Again, the only one that I would remember is this one here

19 on November 20th, 2012, which I had given to you.

20 Q.   So you do recall --

21 A.   Just handing the BP8 out and then what is left and what

22 I'm seeing now.

23      MR. BROWN: Okay, no further questions at this time.

24      THE COURT: Mr. Thiel?

25      MR. THIEL: Redirect.

61

REDIRECT EXAMINATION

BY MR. THIEL:

Q.   That November 20th, 2012 BP8 that's in front of you, you just testified that you handed it out to him. How do you know you handed it out to him?

A.   Because it has my signature and date on it.

Q.   But you don't recall ever getting that back, do you?

A.   No.

MR. THIEL: That's all I have.

THE COURT: Just as a point of clarification, Mr. Edinger. In your Exhibit No. 8, which is your log, would the 11/20/2012 BP8 form appear in your informal resolution log?

THE WITNESS: It would have been somewhere in between 203-12 and 204-12. It would have been in there, if I would have gotten it back.

MR. THIEL: Your Honor, the date is on the left.

THE COURT: Yes, I see the date. But do I understand that when you signed it, isn't that acknowledging receipt?

THE WITNESS: No. I have some forms over there. What I would do, if you were asking me for a BP8 is, I would date it at your cell door, I would date it and put my signature on it, hand it to you, expecting, once you fill it out, to stop me on my next tour down through, hand it back to me, which then I would take upstairs and log in this log book.

THE COURT: Understood. And that never happened, then, in

62

1  this situation?

2      THE WITNESS: Correct.

3      THE COURT: That clarifies my issue that I had. Mr. Brown,

4  do you have any further questions, in light of those questions?

5      MR. BROWN: No, nothing. For the record, I mean, I would

6  like to, if possible, his testimony, with my cross examination,

7  could I review it by chance?

8      THE COURT: I'm not sure I know what you mean. What do you

9  mean?

10      MR. BROWN: My cross examination of his testimony.

11      THE COURT: Yes.

12      MR. BROWN: If possible, if possible, could the Court

13  provide me with a copy of my cross examination of his

14  testimony? I want to make out, in reference to his testimony--

15      THE COURT: You mean, by way of argument?

16      MR. BROWN: Well, when I present my case. Because there are

17  things that he said, questions that I asked in which he

18  answered, in which the Defense tried to show up, but in

19  actuality, you know, he confirmed what I asked him. He

20  confirmed everything that I -- it's for confirmation purposes.

21      THE COURT: Well, if it's for purposes of that -- and I

22  don't know that our court reporter is capable of getting that

23  to you before you begin your testimony. Assuming that that

24  can't be the case, your cross examination was very short. I

25  think you could recall the questions and the answers, and we

1 will certainly take your questions later on. We will certainly

2 listen to your testimony, and if there's a conflict in the

3 testimony of Mr. Edinger and your questions, we will take it as

4 it comes, okay?

5       MR. BROWN: Okay.

6       THE COURT: Anything further, Mr. Thiel, of Mr. Edinger?

7       MR. THIEL: No, thank you, Your Honor.

8       THE COURT: You may step down, sir.

9       MR. THIEL: Your Honor, I don't know if this will help to

10 clear it up, if I may say something. I think, prior to the

11 Court's ruling, they'll look at the transcript itself and make

12 themselves know exactly what was said. I don't think you're

13 going to rule today.

14       THE COURT: No, in fact, what I'm going to afford you the

15 opportunity, and counsel for the Defendants the same

16 opportunity, is a period of time for you to submit to me

17 proposed findings of fact, so that I can review that, and I'm

18 going to give you an opportunity to make further written

19 argument in the case, okay?

20       MR. BROWN: Okay.

21       THE COURT: I won't be ruling today, so I want you to be

22 aware of that.

23       MR. BROWN: Okay.

24       MR. THIEL: The Government calls Keri Sorce.

25 K E R I   A N N    S O R C E  IS CALLED, AND HAVING BEEN

64

1   DULY SWORN, TESTIFIED AS FOLLOWS:

2       THE CLERK: Please state your name and spell it for the

3   record.

4       THE WITNESS: Keri Ann Sorce, K-E-R-I, middle name A-N-N,

5   Sorce, S-O-R-C-E.

6                    DIRECT EXAMINATION

7   BY MR. THIEL:

8   Q.   Good morning, Ms. Sorce.

9   A.   Good morning.

10  Q.   How are you employed?

11  A.   I am a Parelegal Specialist at USP Lewisburg, I'm also

12  Administrative Remedy Clerk.

13  Q.   What are your duties and responsibilities as an

14  Administrative Remedies Clerk?

15  A.   My duties are to receive administrative remedies, BP9's,

16  which are at the institutional level from the unit team,

17  ordinarily, the counselor, and process them according to policy

18  and forward them on for a responses.

19  Q.   There's an exhibit booklet --

20       MR. THIEL: May I approach, Your Honor?

21       THE COURT: You may.

22  BY MR. THIEL:

23  Q.   -- and on the side, there's tabs. I'm going to ask you to

24  look at Defendant's Exhibit 5, okay.

25       Can you please tell the Court what Exhibit No. 5 is?

65

1  A.    This is the policy regarding the administrative remedy

2  process.

3  Q.    As the Administrative Remedy Clerk, you're familiar with

4  that process; right?

5  A.    Yes.

6  Q.    I don't need you to review that anymore.

7        Would you please discuss with the Court or tell the Court

8  what the administrative remedy process in the Federal Bureau of

9  Prisons, and, in particular, USP Lewisburg entails, starting

10  with BP8?

11  A.    Beginning with the BP8, if the counselor or unit team

12  member cannot informally resolve the issue at hand, the inmate

13  will be offered the BP8 form. At that time, they fill out

14  whatever their grievance is, a single issue, and once it's

15  responded to, they can then, if they're still not happy with

16  the response to the BP8, they will request a BP9 from the unit

17  team, and that will be submitted to myself.

18  Q.    Let me stop you there. The BP9, when submitted to

19  yourself, is there a requirement that the inmate attaches to

20  that BP9 a BP8?

21  A.    Yes, they must informally resolve it.

22  Q.    That's just proof for you, as Administrative Remedy Clerk,

23  that he did attempt to resolve this informally; correct?

24  A.    Correct.

25  Q.    He followed the correct process?

1  A.    Yes.

2  Q.    Okay, I'm sorry to stop you. Now, if they're unhappy with

3  the BP9 --

4  A.    If they're unhappy with the institutional level, the

5  warden's response to the BP9, they then have the opportunity to

6  move forward with the process and file the BP10, just the same

7  as the BP9, instead of attaching the BP8, now they must attach

8  their accepted response from the institutional level, the BP9,

9  to the BP10, and submit it to the regional level.

10 Q.    When you say, accepted response. Is there a difference

11 between an accepted response and a rejected response?

12 A.    Yes, an accepted response is a BP9 that is submitted with

13 all the requirements, according to policy. Once it's accepted,

14 the warden at the institution has 20 days to respond to the

15 inmate.

16 Q.    Okay, and now what about if it's rejected?

17 A.    If it's rejected, it will be rejected -- there are several

18 rejection codes, according to policy, different reasons as to

19 why it can be rejected, and if it's rejected, it will describe

20 those codes to the inmate, giving them the opportunity to

21 resubmit.

22 Q.    So if there's a rejected BP9, 10 or 11, has the inmate

23 properly exhausted their administrative remedies?

24 A.    No.

25 Q.    Not if it's not cured; correct?

67

1  A.    Correct.

2  Q.    If they cure the rejection, then, they can move on; right?

3  A.    Correct.

4  Q.    But if it's not cured, they have not properly exhausted

5  their administrative remedies, is that fair to say?

6  A.    That is correct.

7  Q.    Now, in this case, you've been here this morning, Mr.

8  Brown filed a lawsuit claiming Mr. Edinger retaliated against

9  him on July 28, 2012 by making him share a cell with someone he

10  was not compatible with, okay.

11       And the only issue before the Court today, as the Judge

12  instructed and you're aware, are you not, is whether or not Mr.

13  Brown exhausted his administrative remedies over the incident

14  from July 28, 2012, prior to filing the lawsuit against Mr.

15  Edinger. Are you aware of that?

16  A.    Yes.

17  Q.    Because you are sitting here while Mr. Brown testified

18  earlier today, you are also aware that Mr. Brown claims Mr.

19  Edinger denied him certain administrative remedy forms;

20  correct?

21  A.    Correct.

22  Q.    And in fairness to Mr. Brown and the Court, you cannot

23  speak to the issue of whether or not he was denied the forms,

24  can you?

25  A.    No, I cannot.

1  Q.   Please keep in mind that the incident occurred that he's

2  attempting to grieve on July 28, 2012, all right.

3       How many days would Mr. Brown have, after the incident on

4  July 28, 2012, to file the BP8 to begin the informal resolution

5  process?

6  A.   He would have 20 days to submit the 9, meaning, he would

7  have needed to complete the 8 within the 20 days, as well.

8  Q.   Okay. So calculating out from July 28, 20 days, that would

9  be on or about August 17 of 2012; correct?

10  A.   That is correct.

11  Q.   Can you please turn to Defendant's Exhibit 1, and in

12  particular, Page 2 of Defendant's Exhibit 1?

13  A.   Yes.

14  Q.   Page 2 gives the individual that files the complaint, in

15  this case, Mr. Brown, the opportunity to discuss with the Court

16  or put in his complaint all the things that that individual did

17  to try to exhaust their administrative remedies; correct?

18  A.   Correct.

19  Q.   And Mr. Brown indicates that he filed a BP8, BP9, BP10

20  and BP11, but there was no response to him; correct?

21  A.   That is what it says, yes.

22  Q.   Now, I want to look at the particular administrative

23  remedy forms that he claims he filed to begin the process or to

24  complete the process in fact, also.

25       Could you please turn to Page 11 of Defendant's Exhibit 1?

69

1  A.    Yes.

2  Q.    Defendant's Exhibit 1, Page 11, is the November 20th, 2012

3  BP8 that Mr. Brown attached to his complaint as evidence that

4  he exhausted his administrative remedies; correct?

5  A.    Correct.

6  Q.    If we believe everything Mr. Brown says in his complaint

7  as true, that he began the administrative remedy process by

8  filing this BP8 on November 20th, 2012 over an incident that

9  occurred on July 28, 2012, did he properly exhaust his

10 administrative remedies?

11 A.    No, he did not.

12 Q.    Why not?

13 A.    Just by looking at this document, it's extremely untimely,

14 and it's also an incomplete BP8.

15 Q.    Why is it an incomplete BP8?

16 A.    It's incomplete because the only portion that it has is

17 his complaint. It doesn't have a response.

18 Q.    Where would that response be?

19 A.    The response is typically on the back of the form or are

20 attached as a second page.

21 Q.    Now, in his fairness, in fairness to him, he said it was

22 never responded to; correct?

23 A.    Correct.

24 Q.    Please turn to Page 10 of Defendant's Exhibit 1. That's

25 the BP9 form that he alleges he filed; correct?

70

1  A.    Correct.

2  Q.    Isn't the BP9 supposed to be filed within 20 days?

3  A.    That is correct.

4  Q.    Can you please turn to Defendant's Exhibit 2. You don't

5  even have to turn there. You were here for the testimony this

6  morning; correct?

7  A.    Correct.

8  Q.    And Defendant's Exhibit 2 and Defendant's Exhibit 3 are

9  responses by Mr. Brown to the Government's dispositive motions,

10 okay?

11 A.    Okay.

12 Q.    And in them, he claims that after he filed his BP8 on

13 November 20th, 2012, he was denied forms by Mr. Edinger. Were

14 you here for that testimony?

15 A.    Yes.

16 Q.    Most importantly, he was denied, after he started the

17 administrative remedy process by filing his BP8, allegedly

18 filing his BP8 on November 20th, 2012, he claims that the

19 BP9's, 10's and 11's were not provided to him; correct?

20 A.    Correct.

21 Q.    Even if we accept everything he says as true there, that

22 he was denied the BP9's, 10's and 11's, after he filed them on

23 November 20th, did he properly exhaust his administrative

24 remedies?

25 A.    No.

71

1  Q.   Is that because the BP8 that he alleges he filed to start

2  this administrative remedy process was filed 90 days or more

3  past the 20 days that he was required to file it?

4  A.   That is correct.

5  Q.   Now, you heard me before asking Inmate Brown that, when

6  you receive the responses back from a BP9, 10 or 11, they're

7  stamped, and he said, Yes. Is that true?

8  A.   That is true.

9  Q.   You heard me ask him, when you received those responses

10  back, in the bottom right-hand corner of those BP9's, 10's

11  11's, the institutions, themselves, or the region or the

12  central office puts in the administrative remedy number on the

13  bottom right-hand corner, do they not?

14  A.   That is correct.

15       MR. THIEL: Can I approach, Your Honor?

16       THE COURT: You may.

17       MR. THIEL: Please mark these as Defendant's Exhibit 10.

18       (At this time Defendant's Exhibit No. 10 was marked for

19        identification.)

20  BY MR. THIEL:

21  Q.   Please look at this and tell the Court what Defendant's

22  Exhibit 10 is.

23  A.   Page 1 of No. 10 is a Rejection Notice, which is sent to

24  the inmate by the Administrative Remedy Coordinator.

25       It looks like Page No. 2, the actual BP9 form is stamped

1  Received on April 1st, and assigned a case number on the bottom

2  right-hand corner, and based upon the Rejection Notice, it was

3  rejected for several reasons.

4  Q.    Okay, now, I'm going to stop you there. Can you please

5  turn to Defendant's Exhibit 7. Could you tell the Court what

6  Defendant's Exhibit 7 is?

7  A.    This is the rejection class reason codes, these are codes

8  that you input when you are accepting or rejecting a BP9, which

9  gives a description of why it was rejected, so that when it

10  gets sent back to the inmate, they're aware of the rejection

11  reasons.

12  Q.    Okay, so Defendant's Exhibit 10, then, if you turn to Page

13  2 of that, it is, in fact, the March 22, 2013 BP9 that Mr.

14  Brown attached to his complaint, is it not?

15  A.    That is correct.

16  Q.    And that was rejected, was it not?

17  A.    It was rejected.

18  Q.    Could you tell the Court why it was rejected, and if you

19  need to look at Exhibit No. 7, please do so, the rejection

20  codes.

21  A.    It was rejected for several reasons. Number one being you

22  did not submit your request through your counselor or other

23  authorized person.

24  Q.    So I'll stop you right there. Does that mean he did not

25  attach the BP8 to the BP9?

1  A.    That rejection code does not. That one just

2  means -- inmates are required to submit their BP9 through their

3  counselor or their unit team. If they try to send it directly

4  through institutional mail, it's rejected.

5  Q.    Okay, carry on. I'm sorry.

6  A.    Rejection Reason No. 2 is, You did not attempt any formal

7  resolution, prior to submission of administrative remedy or you

8  did not provide the necessary evidence of your attempt at

9  informal resolution.

10  Q.    I jumped the gun a little bit. That is telling the inmate

11  in this rejection notice that, You didn't file the BP8;

12  correct?

13  A.    Correct.

14  Q.    So he had the opportunity to attach a BP8 at that time to

15  this and send it back, did he not?

16  A.    He did.

17  Q.    Did he?

18  A.    Not that I'm aware of.

19  Q.    Okay. Again, he did file this, like he said, in his

20  complaint; correct?

21  A.    Correct.

22  Q.    But it wouldn't have mattered, because he did not file a

23  BP8; correct?

24  A.    Correct.

25  Q.    He couldn't possibly exhaust if he did not file a BP8

74

1  within the 20 days; correct?

2  A.   Correct.

3       MR. THIEL: May I approach again, Your Honor?

4       THE COURT: Yes, you may.

5       MR. THIEL: Please mark this as Defendant's Exhibit 11.

6       (At this time Defendant's Exhibit No. 11 was marked for

7        identification.)

8  BY MR. THIEL:

9  Q.   Please take a moment and review Defendant's Exhibit No. 11

10 and tell us what that is.

11 A.   This is another rejection notice. This is not from the

12 institutional level, this is from the central office level,

13 meaning, the BP11.

14 Q.   Okay. And it was rejected; correct?

15 A.   It was rejected.

16 Q.   If you look at Page 2 again, Defendant's Exhibit 11, it is

17 stamped as Received; correct?

18 A.   Correct.

19 Q.   And General Counsel's office wrote in there the case

20 number, meaning, the incident number for this administrative

21 remedy; correct?

22 A.   That is correct.

23 Q.   That indicates that they received it. And this was

24 rejected, also?

25 A.   This was rejected.

75

1  Q.   And the fact that he did file this, like he said, in his

2  complaint, did that make a difference, based on the fact that

3  he did not file a BP8?

4  A.   No.

5  Q.   So even though he filed this, he couldn't have properly

6  exhausted?

7  A.   No.

8  Q.   That's because he did not file the BP8; correct?

9  A.   Correct.

10 Q.   And I'm going to ask you to look at -- I don't know if

11 they're still up there -- Exhibits 1, 2 and 3 of the

12 Plaintiffs. I guess they're not, so I will give you my copies.

13      MR. THIEL: Your Honor, if you don't mind me standing right

14 here.

15      THE COURT: Not a problem.

16 BY MR. THIEL:

17 Q.   Plaintiff's Exhibit No.1, let the record reflect, is a

18 September 7, Sensitive 10 that Mr. Brown claims he filed, okay?

19 A.   Okay.

20 Q.   If this was received, would it not have a stamp like the

21 ones we just looked at?

22 A.   It would have a stamp and case number.

23 Q.   Okay, the case number would have been down here in the

24 bottom right-hand corner; correct?

25 A.   That is correct.

76

1  Q.   Is this fraudulent?

2  A.   It is.

3  Q.   And the remedy up here, he testified he put it there;

4  correct?

5  A.   Correct.

6  Q.   Exhibit No. 2, Plaintiff's Exhibit No. 2, the Sensitive 9

7  that he says he filed.

8       If he, in fact, filed it like he said he did, would it be

9  time-stamped?

10  A.   It would be stamped.

11  Q.   Would there be a case number in the lower right-hand

12  corner?

13  A.   Yes.

14  Q.   Is there any evidence whatsoever that he filed these

15  documents?

16  A.   No.

17       MR. BROWN: Objection.

18       THE COURT: What's the nature of the objection?

19       MR. BROWN: The facts say different. The retrieval

20  system -- it contradicts everything that she's saying -- in the

21  retrieval system that we all go by --

22       THE COURT: Your objection is based on a dispute of the

23  facts, is that correct?

24       MR. BROWN: Yes.

25       THE COURT: It's not based on an evidentiary issue, so I'll

77

1   overrule the objection, allow the witness to testify. If

2   there's a dispute and you want to clarify that, you can ask her

3   questions on cross examination or clarify it during your case.

4   Do you understand that?

5        MR. BROWN: Okay.

6   BY MR. THIEL:

7   Q.   Plaintiff's Exhibit No. 3, there's a Rejection Notice on

8   the front. Can you look at that?

9   A.   Yes.

10  Q.   Is there any evidence whatsoever that the Rejection Notice

11  on the front pertains to what is attached, what Plaintiff

12  himself testified to that he attached to the Rejection Notice,

13  is there any evidence that you, as the Administrative Remedies

14  Clerk can find, linking these two together?

15  A.   No.

16  Q.   Now, Mr. Brown testified that he was unable to get BP9's,

17  10's and 11's between November 20th of 2012 when he filed the

18  BP8 and March 22 of 2013 when he filed what we just looked at

19  as his BP9, okay.

20       Can you please turn to Defendant's Exhibit No. 6. First of

21  all, tell the Court what that is.

22  A.   This is an Administrative Remedy Generalized Retrieval.

23  It's a report that you can run out of the database, in regards

24  to any administrative remedies an inmate has filed that has

25  been accepted or rejected over their entire time in the Bureau

1  of Prisons.

2  Q.    If you turn to the first page -- I'm sorry, the second

3  page -- I asked him a question earlier today if he has been

4  filing administrative remedies since 2002. Does that indicate

5  he has been filing administrative remedies or grievances since

6  2002?

7  A.    Yes, it does.

8  Q.    Can you please turn to Page 37.

9  A.    Okay.

10  Q.    In general, these are in chronological order, correct, so

11  on top of Page 37, the first one there is a date of September

12  6, 2012; correct?

13  A.    Correct.

14  Q.    And on the page before that, they were July, so are they

15  in chronological order, as far as you know?

16  A.    Yes, they are.

17  Q.    I'm sorry, that was Page 36. On Page 37, the top of the

18  page, he filed an administrative remedy, it looks like, on

19  October 26, 2012; correct?

20  A.    That is correct.

21  Q.    Now, we're back to this point. He claimed and testified

22  today that he was denied BP9's, 10's and 11's between November

23  20th of 2012 and March 22, 2013; correct?

24  A.    Correct.

25  Q.    The next one down, the date on that. Can you tell the

1 Court what the date is on that?

2 A.   November 23, 2012.

3 Q.   Do you know where, by looking at this, where that was

4 filed and what that was?

5 A.   That was a BP10 filed to the regional level.

6 Q.   So his testimony earlier today that he did not have the

7 forms, between November 20th of 2012 and March 22, 2013, is

8 false, is it not?

9 A.   It's false.

10 Q.   Can you turn to the next page. Top of the page. Can you

11 tell the Court when that remedy was filed and what type of

12 remedy that was?

13 A.   It was filed on December 5, 2012, and that was also to the

14 regional level, BP10.

15 Q.   That's also during the time frame that he claims he was

16 not able to get a BP9 from Counselor Edinger; is that correct?

17 A.   That is correct.

18 Q.   The next one down, can you tell the Court when that was

19 filed and what form was used to file it?

20 A.   January 18, 2013, and that was filed at the institutional

21 level via BP9.

22 Q.   That is also during the time Mr. Brown has testified that

23 he was not able to get forms, in fact, was denied forms by

24 Counselor Edinger, is it not?

25 A.   That is correct.

80

1  Q.   Please turn to the next page, which is Defendant's Exhibit
2  No. 6, Page 39. At the top of the page, the first attempt,
3  could you tell the Court what date that was and what form was
4  filed?
5  A.   January 22, 2013. This was filed to the central office via
6  BP11.
7  Q.   Again, that was during the time that Mr. Brown claims he
8  was not able to get BP9's, 10's and 11's; correct?
9  A.   Correct.
10 Q.   The next one, can you tell the Court when that was filed
11 and what that was, what form was used?
12 A.   It was filed on February 25, 2013, to the central office
13 via BP11.
14 Q.   Was that, again, during the time that Mr. Brown testified
15 to today under oath that he was not provided BP9's, 10's and
16 11's?
17 A.   Yes, it was.
18 Q.   Now, as a practical matter, even if we accept the fact
19 that Mr. Brown is correct, and that after he filed his BP8 on
20 November 20th, 2009, that he was denied the forms by Mr.
21 Edinger, even if we accept that as true, and he started his
22 administrative remedy process on November 20, 2012, did he
23 properly exhaust?
24 A.   No, he did not.
25      MR. THIEL: Thank you. That's all I have, Your Honor.

1      THE COURT: Mr. Brown, do you have any questions?

2      MR. BROWN: Yes.

3                      CROSS EXAMINATION

4  BY MR. BROWN:

5  Q.   You are Keri Sorce, Administrative Remedy Coordinator?

6  A.   Administrative Remedy Clerk.

7  Q.   Okay. I have a few questions, in response to your

8  testimony today.

9      The Defense counsel asked you, in reference to a Sensitive

10  10 that was filed by Plaintiff to the regional office, and

11  Defense counsel asked you whether this document has been filed

12  or is fraudulent. And you gave a response that it's fraudulent,

13  and this is not a valid document, so to speak.

14      Under the grievance administrative remedy system, the

15  records will reflect on page -- Exhibit 6, Page 36. Do you see

16  that?

17  A.   Yes.

18  Q.   The Sensitive 10 that was filed by the Plaintiff

19  concerning Remedy No. 704383-R1 was submitted to the regional

20  office. Although, it was rejected, there is a document via the

21  grievance retrieval system --

22      MR. THIEL: Just object, in that, Your Honor, he's looking

23  at this and asking whether or not a Sensitive 10 was filed, and

24  clearly -- I can't testify as to whether or not a Sensitive 10

25  was filed, but something was filed here. We don't disagree with

82

1  that. The record says something was filed on that day. But he's

2  not connecting it to anything, and I don't think she can answer

3  that unless he does.

4      THE COURT: Are you suggesting, Mr. Brown, that your

5  Sensitive 10 is referenced on Page 36 of Exhibit 6?

6      MR. BROWN: Yes, it is referenced to that.

7      THE COURT: Which one is it?

8      MR. BROWN: September 7, 2012 document. I think it was

9  Exhibit 1 by the Court.

10     THE COURT: But on Page 36 of Exhibit 6, where is that

11 document referenced?  The top portion or bottom?

12     MR. BROWN: The bottom portion. Administrative Remedy No.

13 704383-R1, and, also, there was another matter in which the

14 Plaintiff would like to present to the Court.

15     Well, it has already been presented, it's Exhibit 3. Are

16 you aware of that? So it's a copy of the grievance.

17     THE COURT: Plaintiff's Exhibit No. 3?

18     MR. THIEL: I don't think she has a copy in front of her,

19 Your Honor.

20     THE COURT: You can use my copy.

21 BY MR. BROWN:

22 Q.  This was given to the Court to show in reference to your

23 dispute in challenging whether this document is fraudulent, as

24 well.

25     You said in your testimony that this document -- there's

1  no record of this document and that it's a fraud.

2  A.   The Plaintiff's Exhibit No. 3, Page 2, there is nothing on

3  Page 2 to indicate that this page corresponds with this claim

4  number.

5       THE COURT: The claim number that you're referring to is on

6  Page 1 of that exhibit?

7       THE WITNESS: Yes, there's a claim number on Page 1, Remedy

8  I.D. No. 710674-R1. But on the actual form itself, it's not

9  stamped, and the case number is not written in by the remedy

10 clerk at that level, therefore, there's no way to prove or

11 determine that Page No. 2 coincides with that remedy case file

12 number.

13 BY MR. BROWN:

14 Q.   This is because it's a copy document that was copied

15 before it was sent to the regional office, is that what you're

16 basing your opinion on?

17 A.   I'm basing it on the fact that it is not stamped and does

18 not have a number provided by the Bureau of Prisons indicating

19 that this form coincides with that number. There's nothing on

20 this to indicate -- your handwriting is at the top, but there's

21 nothing on here from the Bureau of Prisons identifying that

22 this form coincides with that case file number.

23 Q.   As the Administrative Remedy Coordinator of USP Lewisburg,

24 let's say a BP8, if a BP8 is not made available to a prisoner,

25 is it considered filed?

84

1      MR. THIEL: Objection. I don't think the ground work has

2  been laid that she's the individual that makes the

3  determination on whether or not to accept deny or anything.

4      THE COURT: Well, let's see. I'm going to provide him some

5  latitude on cross examination. Let's see if she can answer that

6  question. I don't know if she can or cannot.

7          THE WITNESS: Can you repeat that question, please?

8  BY MR. BROWN:

9  Q.   Let me re-question. On a BP8 grievance, when a prisoner

10  asks for a BP8 grievance from staff and he's denied that BP8,

11  for whatever reason, is that taken into consideration in

12  reference to whether the grievance process has begun?

13  A.   I can only speak for the administrative remedy -- the BP9

14  portion of it. I do not handle BP8's, I'm not a unit team

15  member, all I can say is that when you submit your BP9, you are

16  required to have a completed copy of a BP8 attached to it at

17  that time. If you do not, it is rejected according to policy.

18  Q.   So what you're saying is, you can't confirm or deny

19  whether the BP8 process has been completed, if a prisoner is

20  denied his administrative remedy of a BP8, once it is requested

21  from the counselor?

22  A.   I have nothing to do with that portion of it, no. I will

23  say, though, when you submit your BP9 and you are -- and it is

24  rejected based upon the code of not attempting informal

25  resolution or providing proof of informal resolution, at that

85

1  time, that was the rejection code that was used, and,

2  therefore, you could not move forward with your administrative

3  remedy process without completing the first portion, being the

4  BP8.

5  Q.   Okay. Now, should a BP8 have been submitted through the

6  proper channels of a counselor as the grievance coordinator, if

7  this BP8 has been filed, would you receive a copy -- would you

8  be aware of it?

9  A.   The only time I would receive a copy of a BP8 is when you,

10 yourself, would submit a BP9 with your original BP8 attached to

11 it. That's the only time that I see a BP8.

12 Q.   A BP8 -- correct me if I'm wrong -- a BP8 is used to deal

13 with informal issues in the institution?

14 A.   Yes, it is.

15 Q.   And according to the policy, the BP8 is only handled by

16 the counselor?

17 A.   That's incorrect.

18 Q.   Please explain.

19 A.   According to policy, an inmate can get a form from another

20 unit team member other than their counselor. You did have a

21 unit manager.

22 Q.   I was denied that.

23 A.   I don't --

24 Q.   This is what was told to me, that the only person, by all

25 staff, all of them, within my 20 days, all of them, the only

86

1  person that I can get a BP8 informal grievance from is my

2  counselor, that's it, nobody else, nobody can help -- no unit

3  -- not the unit counselor, the unit case manager, the unit

4  manager, nobody. Only the counselor.

5      That is what was told to me by staff multiple staff,

6  numerous staff.

7      THE COURT: Mr. Brown, could we have a question? Let's have

8  a question with that so we can move on.

9  BY MR. BROWN:

10  Q.   Okay. What I'd like to know, have you ever -- based upon

11  your findings, in reference to the BP8 -- well, not BP8, the

12  BP9's, BP10's and BP11's, what I want to know, what I would

13  like to know, and if we can help the Court, when a BP9 is filed

14  and it doesn't come through the counselor, is it rejected

15  because it doesn't come from the counselor?

16  A.   It's rejected if it has came through institutional mail

17  rather than being given to a staff member and then the staff

18  member brings it to me. That is a rejection code set forth by

19  the policy.

20  Q.   Okay.

21      MR. BROWN: That's pretty much everything that I have right

22  now.

23      THE COURT: All right. Mr. Thiel, any further questions?

24      MR. THIEL: I have no further questions, Your Honor. Thank

25  you.

1        THE COURT: Ms. Sorce, you may step down. Any further

2   witnesses?

3        MR. THIEL: No further witnesses, Your Honor.

4        THE COURT: All right, I think, before we proceed with your

5   testimony, let's take a few-minute recess and see where we're

6   at, and then we will conclude and wrap it up shortly

7   thereafter, okay. Let's take a 10 or 15-minutes recess.

8        (At this time a recess was taken.)

9        THE COURT: We're at that part of the case where you can

10  put on whatever testimony or evidence you want to submit. I

11  know that you testified earlier, after you were called as of

12  cross examination. Now, you could either resume the witness

13  stand, if you'd like, or I'll allow you to testify from counsel

14  table, whatever your preference.

15       MR. BROWN: Okay. I'll testify from counsel table, Your

16  Honor.

17       THE COURT: Okay. I'll just remind you you're still under

18  oath. You may proceed.

19       MR. BROWN: Okay, Your Honor. I wanted to bring forth my

20  case for exhaustion of my administrative remedies, and I just

21  wanted to bring forth all of the evidence that the Plaintiff

22  has that is evidence that he exhausted his administrative

23  remedies to the best of his ability, to the best of his

24  capabilities that were made available to him, during the course

25  of this issue.

1      All I can do is lay out the facts, as it stands, to try to

2  enlighten the Court to the issue that's being addressed today.

3  And first and foremost, the Plaintiff will testify that shortly

4  thereafter July the 28th, 2012, approached the Defendant

5  Counselor Edinger and asked him for a BP8 informal grievance in

6  which he was denied this informal grievance by Counselor

7  Edinger, after explaining to him what it is that he was going

8  to use the BP8 for.

9      At no time during this hearing has the Plaintiff ever

10 shown anything that could dispute the fact that he was denied

11 by Counselor Edinger concerning this issue that we're here

12 today for. The fact that the BP8 grievances that were given to

13 the Plaintiff in which he was asked what he was using the BP8

14 grievances for, the Plaintiff was forthcoming and totally

15 honest with the Defendant in what he needed those grievances

16 for.

17     And each time that the Plaintiff asked or requested these

18 BP8 grievances before, during the time of July the 28th of 2012

19 and November the 20th, 2012, the Plaintiff was forthright with

20 his intent of what he needed the administrative grievances for

21 and utilized them each time for exactly what he was going to

22 use them for.

23     The evidence is consistent with the Plaintiff in

24 demonstrating to the Court that, okay, the issue of exhaustion

25 of administrative remedies was documented in further filings in

1 the Sensitive 10, in a Sensitive 9 and a BP10. He tried to

2 remedy the issue that is being addressed today, in reference to

3 exhaustion of administrative remedies.

4      Now, the Plaintiff would like to say to the Court that the

5 Defendant brought forth evidence and exhibits that the

6 Plaintiff has filed, BP8's, with the counselor Defendant since

7 the incident occurred in July the 28th, 2012. And the Plaintiff

8 does not dispute any of the claims and facts that Defendant is

9 making, in reference to these records that show this.

10      But the point is that each of the BP8 informal grievances

11 that was filed by the Plaintiff was in reference to the issues

12 that these BP8 informal grievances were asked for.

13      If the Plaintiff requests BP8 informal grievances but was

14 denied by the Defendant Counselor Edinger, he cannot move

15 forward. He didn't falsify, he didn't try to lie or be

16 untruthful with the counselor about what he needed the BP8

17 grievances for, because that's not my nature, that's not what I

18 do, I'm not into that. I was denied this.

19      And I'd like to add to the facts that the Defendant failed

20 to present even further evidence to the Court of another BP8

21 grievance that was requested by the Plaintiff to show to the

22 Court that he's not hiding nothing, and it's dated September

23 27, 2012.

24      The BP8 grievance that he asked for from the Defendant

25 counselor in which he asked the Plaintiff, What do you need it

1  for? And once again, just as throughout this proceeding and

2  everything else, Defendant told him the truth. I just told the

3  truth. I just want to strike my mental health record. I told

4  the truth. And he gave it to me.

5      The Plaintiff then moved forward to present this BP8

6  document to the Defendant Counselor Edinger, just as he said

7  what he was going to need it for.

8      THE COURT: Is that a document that you want to submit as

9  evidence in this case?

10      MR. BROWN: I would like to admit it as evidence.

11      THE COURT: We will get four copies of that. We will get

12  that marked.

13      MR. BROWN: Do you want me to continue?

14      THE COURT: Let's wait until she comes back with the

15  document, and then we will have it marked and we can proceed

16  with your testimony.

17      (At this time  Plaintiff's Exhibit No. 4 was marked for

18       identification.)

19      THE COURT: Okay, we have now in front of you, Mr. Brown,

20  Plaintiff's Exhibit No. 4, which you were referencing. It is

21  properly marked. You may resume your testimony.

22      MR. BROWN: Okay. The Defense pointed out facts which are

23  documented facts that the Plaintiff would not dispute,

24  although, he may not recall, but Plaintiff does not dispute

25  because there's documented evidence of a BP8 being filed on

1  August 2, 2012. This was allegedly four to five days after the

2  incident occurred on July the 28, 2012.

3       What the Plaintiff would like to point out to the Court is

4  that this evidence that was documented along with the Plaintiff

5  Exhibit 4, verifies and shows and proves that the Plaintiff has

6  been consistently forthright and honest and truthful with the

7  Court, in reference to the procedures of getting these BP8

8  administrative remedies that he filed.

9       Here it is, it's documented in the BOP retrieval system or

10 the Exhibit 6 or whatever it was that he showed about some

11 document I was supposed to have filed on August 2. That's what

12 I do, I file it. So I understand what this proves and what the

13 August 2 BP8 grievance proves is that I understand the

14 administrative grievance system, that you have to file a BP8

15 first and foremost. This is what this proves. This doesn't

16 discredit me about nothing.

17      What it does is it validates my argument that, in order to

18 exhaust your administrative remedies, you must have a BP8,

19 first and foremost, before you move on to anything.

20      Now, once the Plaintiff could not get a BP8 informal

21 grievance from the Counselor Defendant, he went around the

22 institution, you know, in frustration, with trying to exhaust

23 his administrative remedies in a timely fashion. Once the 20

24 days was up, the Plaintiff filed a Sensitive 10 to the region

25 to go outside the institutional level, and it was properly

1  rejected because they say I have to start at the institutional

2  level. But what this grievance and the August 2 grievance shows

3  is that I understand the process, that the Plaintiff

4  understands the process.

5      Once the Sensitive 10 was rejected and the Plaintiff was

6  then advised that he must start at the institutional level, the

7  Plaintiff, I, Joseph Brown, the Plaintiff, then filed a

8  Sensitive 9, a Sensitive 9 inside the institution, and this

9  copy of the Sensitive 9 was given, this was given to the

10 Defendant Matt Edinger for processing, you know.

11     But mysteriously, this document was never given to the

12 warden, it disappeared. It's not even documented in the BOP

13 retrieval system, at all, it doesn't even have a number or

14 nothing. This is another attempt by the Defendant to thwart

15 this issue, it's the issue, it's only the issue -- this is the

16 only documented records of this issue, this particular issue.

17 He's not having any problems filing any other issues,

18 grievances, but it's this one issue, this one issue he's trying

19 to hide, for whatever reason, he's just trying to hide this, it

20 just won't go away.

21     When I didn't get a response -- when the Plaintiff didn't

22 get a response for this, he moved and sent a copy of this

23 Sensitive 9, attached to the BP10, to the regional office in

24 hopes that they would -- to show them, and a copy of the

25 Sensitive 9 was sent to show the regional office that he did

1 start at the institutional level, at the institutional

2 level.

3       But for whatever reason, this document wasn't filed, the

4 Sensitive 9, but to show the regional office, you know, to

5 prove that I attempted to -- I did exactly what they told me

6 to. That's all I'm doing, I just did everything that I was told

7 to do, you know, and they rejected it, you know, they sent it

8 back to me.

9       But whenever I send things to the regional office, it

10 always -- there's a remedy number for it, there's a remedy

11 number for every document that I send to the regional office.

12 But for whatever reason --

13       THE COURT: Which document are you referring to?

14       MR. BROWN: October 23, 2012 that is being disputed by the

15 Defense claiming that this is a fraudulent record.

16       THE COURT: Is that Plaintiff's No. 3?

17       MR. BROWN: Yes, Exhibit No. 3.

18       THE COURT: You're referring to Plaintiff's Exhibit No. 3,

19 October 23 --

20       MR. BROWN: Yes.

21       THE COURT: -- 2012.

22       MR. BROWN: That is correct.

23       THE COURT: Is it your testimony that you gave this form to

24 Mr. Edinger?

25       MR. BROWN: No, I sent this to the regional office October

94

1  23, 2012.

2      THE COURT:  Okay.

3      MR. BROWN: I sent it along with a copy of the Sensitive 9

4  that I gave to Counselor Edinger to show that I began on the

5  institutional level, as advised in my rejection notice with the

6  Sensitive 10 that I filed on September 7, 2012.

7      From that point, when I asked the counselor for this BP8

8  to strike my mental health evaluations, and this is exactly

9  what I used it for.

10     THE COURT: Let me see if I can interpret what you're

11  trying to testify about so that I have it right. You tell me if

12  I'm right or wrong.

13     Your position is is that that Plaintiff's Exhibit No. 4,

14  which is the BP8 that was provided to you on September 27, 2012

15  by Mr. Edinger and identified as informal resolution attempt

16  191-12.

17     MR. BROWN: Yes.

18     THE COURT: Was prepared by you and provided to Counselor

19  Edinger.

20     MR. BROWN: Yes.

21     THE COURT: It went through the process, and on the

22  backside of the document, it reflects that a disposition of the

23  document -- in other words, they told you what they can and

24  cannot do, for example.

25     MR. BROWN: Right.

1      THE COURT: So if you wanted to take it to the next level,

2  now, you were able to file your BP9, attach this document to

3  the BP9 and proceed accordingly, is that right?

4      MR. BROWN: That is correct.

5      THE COURT: Is it your testimony that you and Mr. Edinger

6  discussed this matter, he provided you with the form, you

7  completed it, and he processed it, in accordance with BOP

8  policy, is that right?

9      MR. BROWN: That is correct.

10     THE COURT: And that you're suggesting, since he was the

11  subject of the other matter, that he refused to process that or

12  decided not to process it, in some way, is that right?

13     MR. BROWN: That is correct.

14     THE COURT: That's the impression that I'm getting from

15  your testimony, and I just want to make sure that that's the

16  impression you want to convey, is that correct?

17     MR. BROWN: That is correct, selective filing, he's filing

18  things selectively, things that he may deem as a threat.

19     THE COURT: As I further understand your testimony, you're

20  suggesting that, based upon your years of experience of filing

21  these types of matters, you're familiar with the rules, you're

22  familiar with the time requirements, the deadline requirements,

23  basically, and that you're utilizing this to show that, since

24  you filed documents timely in the past and in accordance with

25  BOP policy, that, in this instance, since Mr. Edinger was not

1  the subject of that matter, that's Plaintiff's 4, he processed

2  it according to policy, is that correct?

3      MR. BROWN: I'm trying to show a consistent pattern of, you

4  know, a consistent pattern.

5      THE COURT: I understand.

6      MR. BROWN: My point with this matter, it's this issue, it

7  has nothing to do with nothing else, it's this issue in which

8  he's trying to thwart. You know. He wants to undermine the

9  grievance process for the Plaintiff, because of the posing

10 threat that it has, in reference to his misconduct that has

11 been well-documented extensively over the years.

12     THE COURT: Well, that's not something that's before me on

13 this issue, so what's before me is the issue of whether you

14 exhausted your administrative remedies in this matter. What may

15 or may not have happened in the past, with regard to Mr.

16 Edinger, is not an issue that's before me today.

17     MR. BROWN: But what is before the Court is the exhaustion

18 of my administrative remedies --

19     THE COURT: I agree with that.

20     MR. BROWN: -- in which the Defendant, it all coincides

21 with the exhaustion of these administrative remedies, because

22 of constant and deliberate misconduct that is being used by the

23 Defendant to undermine any form of justice or grievance remedy

24 process in which we're here today to try to settle.

25     So it's like, in my opinion, this is just the way that I

1  see it, it coincides. Whether we want to keep it strictly on

2  exhaustion, his misconduct, in reference what we're here for

3  coincides with everything.

4      THE COURT: You're saying that it goes to the credibility

5  issues that I have to determine?

6      MR. BROWN: Yes.

7      THE COURT: Under those circumstances, we will accept it

8  for that purpose.

9      MR. BROWN: And I strongly advise the Court to take into

10  consideration the character of this person, the Defendant, in

11  reference to his record as a whole over the entirety of his

12  service to the BOP.

13      THE COURT: I haven't heard any issue regarding his

14  character.

15      MR. BROWN: I'm asking the Court to take into account -- if

16  the Plaintiff must call or subpoena evidence of misconduct in

17  the past to the Court is evidence of his history, his whole

18  history, it's just, wow, this is unbelievable. I just strongly,

19  in my opinion, advise the Court to take into account these

20  matters.

21      THE COURT: All right.

22      MR. BROWN: And I'm not one to be pointing the finger at

23  nobody about nothing, you know, but we're here for exhaustion

24  of administrative remedies, and I'm asking the Court to take

25  into account his history of misconduct, in reference to the

1  issue that's being addressed today. Because, for whatever

2  reason, I have records of this issue, particular issue, it's

3  just this particular issue that goes -- September the 7th is

4  when I filed the Sensitive 10 document on his misconduct, in

5  reference to this particular issue.

6      Now, if the Plaintiff asks for a BP8 for all of the lesser

7  issues that have been brought before the Court from the

8  Defendant, why wouldn't he, why wouldn't he ask for a BP8 for

9  this same issue.

10     THE COURT: I understand that argument, I think I

11  understand your position. I know you're somewhat repetitious on

12  it. Is there something different that you want to go on to

13  next?

14     MR. BROWN: All right. Also, I just want to say, in

15  reference to the things that I talked about, the November 20,

16  2012 BP8, this issue, he didn't -- this time, for whatever

17  reason, he didn't ask me what I needed the grievance for,

18  because if he had known, he wouldn't have gave it to me. He

19  didn't ask this time.

20     I don't know if I gained his confidence, because each time

21  that I asked him for a BP8 and he asked me what I needed it

22  for, and if it wasn't about this issue, he gave it to me.

23     THE COURT: Let me ask you this. Did you make a copy of

24  that document, before you presented it to him?

25     MR. BROWN: Yeah, before I presented it to him, yeah.

99

1        THE COURT: Where did you make that copy?

2        MR. BROWN: I sent them out somewhere.

3        THE COURT: And it came back to you?

4        MR. BROWN: Yeah.

5        THE COURT: When did you provide it to him?

6        MR. BROWN: I can't recall. It was shortly

7    after -- whenever I got it back -- and I can't put a finger on

8    exactly what date it was or anything, I wouldn't do that.

9        THE COURT: You heard testimony before that on, usually,

10   the backside or a separate page, there's usually a response.

11       MR. BROWN: That's right.

12       THE COURT: And on that document, the BP8, 11/20/2012,

13   there was no response.

14       MR. BROWN: No response.

15       THE COURT: Did you hand that back to Mr. Edinger?

16       MR. BROWN: Yes.

17       THE COURT: What did he say to you, when you handed it back

18   to him?

19       MR. BROWN: Nothing, he just walked away.

20       THE COURT: Are you suggesting that he never followed

21   through with the proper disposition of that BP8?

22       MR. BROWN: I can only go according to his actions, because

23   I didn't get a response. That was his response. I didn't get a

24   response.

25       THE COURT: Do I understand it that it's your suggestion

1  that he didn't follow through, because you claimed that he was

2  the subject matter of this grievance, is that correct?

3      MR. BROWN: Once again. As I stated before, every grievance

4  concerning this issue, this particular issue that I filed was

5  recorded by the BOP retrieval system, but the two grievances

6  that I gave him, which is the Sensitive 9 and the BP8 that he

7  gave me, for whatever reason, mysteriously wasn't filed.

8  Mysteriously.

9      I mean, it's just this issue. But all the other issues are

10 being documented and filed, even the other BP8's that I gave

11 him, he filed. But this particular issue, he had a problem with

12 it, and it always disappeared, whenever it was put into his

13 hands.

14     THE COURT: Let me ask you this question. If you recall,

15 there was testimony by Mr. Edinger regarding Government Exhibit

16 8, it was in the binder, and it was his log that he talked

17 about, BP8 log, and there were, as I recall it, at least, two

18 instances from this period of time, from July 23, 2012 through

19 the end of October or so, 2012 -- I'm sorry, December 7, 2012,

20 there were at least two instances where you made a request for

21 a BP8 form, Mr. Edinger provided you with that form, you

22 completed it, and the process was followed through, as I

23 understand it.

24     MR. BROWN: That is correct.

25     THE COURT: So during this same time frame, you had asked

1  for forms, he provided them to you, and he followed through

2  with the response, is that right?

3      MR. BROWN: That is correct.

4      THE COURT: And if you wanted to file a BP9, you were in a

5  position to do so, because those documents were completed

6  properly, is that right?

7      MR. BROWN: That is correct.

8      THE COURT: Is there anything else that you want to talk

9  about today that's related to this issue?

10      MR. BROWN: Yes. Once the Plaintiff didn't receive a

11  response from the BP9 in a timely manner -- well, he didn't

12  receive a response, not even in a timely matter, he didn't even

13  receive a response. The Plaintiff was denied any further

14  grievances, at all, he didn't have nothing coming, I'm talking

15  about absolute nothing. I'm talking about zero.

16      And the Plaintiff was able to obtain any further

17  grievances from other prisoners, that was the only way that he

18  can get these grievances.

19      THE COURT: You mean, the forms that you're talking about?

20      MR. BROWN: The grievance forms. BP8's, because they have

21  to come from him, he has to sign it, he has to date it, and

22  that wasn't going to happen. So I received no further BP8's

23  from him, at all, and I never received no further BP9's, 10's

24  or 11's from him.

25      THE COURT: Is that as it relates to this case or are you

1 saying in general?

2     MR. BROWN: In general.

3     THE COURT: Well, you just acknowledged that you requested

4 two and he provided you with two BP8 forms.

5     MR. BROWN: I'm talking about after I filed the November

6 the 20th, I received no further grievances from him. I received

7 no further grievances from him. But the grievances that I

8 pointed out before, Exhibit 4 and another that the Defense

9 pointed out, August the 2nd, now, I didn't see an exhibit for

10 that, but for the record, these were grievances that I obtained

11 from the counselor before I submitted this November 20th, 2012

12 BP8 grievance.

13     This was the straw that he was just fed up, you know. I

14 received no further grievances, at all, after November 20, 2012

15 from him. The only way I can obtain -- and let the record

16 reflect, in the administrative grievance retrieval system, it

17 will show, it shows that, well, nothing -- well, the BP8 is not

18 going to be in this. The BP8 is not going to be in this, the

19 grievance retrieval system, but the record will reflect--

20     THE COURT: But you had to have a BP8 filing, at some point

21 in time, in order for that -- for your history of your prior

22 filings to have occurred, correct? Because you wouldn't be able

23 to file a BP9 without having gone through the BP8 process.

24     MR. BROWN: Yes, that is correct, Your Honor, but the

25 grievance retrieval system is not going to -- but you would

1  have to read between the lines, in reference to the grievance

2  retrieval system that, in order for the BP9's, the 10's, and

3  all the other filings, I had to have filed a BP8 beforehand,

4  even though it's not documented in the grievance retrieval

5  system.

6      You can assume that that's, you know, the BP8 was filed. I

7  appreciate that, Your Honor.

8      THE COURT: Okay. What other testimony related to this

9  issue that you need to provide?

10     MR. BROWN: Excuse me. Never mind, Your Honor. I filed

11  this -- once I didn't get a response concerning this November

12  12, BP8 --

13     THE COURT: November 20th?

14     MR. BROWN: Yes, November 20, 2012, I didn't receive a

15  response from that, I began to get further administrative

16  remedies from other prisoners because I was denied any further

17  grievances, at all, from the Defendant, and one of the

18  grievances that I filed concerning -- it's concerning this

19  issue, it's concerning this issue of -- and I attached a copy

20  of the BP8 from November 20th, 2012 to this BP9.

21     And because he, for whatever reason, when it comes to this

22  issue, he's just not giving me -- he's denying me due process

23  concerning this issue. So I took it upon myself, and I mean I

24  just did what I can do, you know. Because if I give him the BP9

25  concerning this issue, along with the copy of the BP8, for

1  whatever reason, I thought that it wasn't going to get filed,

2  so I put it in the internal mailing system, and they promptly

3  rejected it, because they said I had to give it to the

4  Counselor Defendant. This is the process, this is the

5  procedure. What can I do?

6      So once it was rejected, I moved to the BP10 without

7  even -- and this was promptly rejected, as well. I then just

8  continued on with the process, for whatever reason, and with

9  the BP11. This also was promptly rejected, as well, because

10 they say that I needed to start at the institutional level. So

11 the Plaintiff is trying to show and demonstrate a record of

12 consistency with this issue.

13     But for whatever reason, this issue is not being given due

14 process by the Defendant. And I'm quite sure -- I haven't

15 looked at his history or disciplinary past -- but I'm quite

16 sure this is not the first time and I'm not the first person to

17 have ever looked at his record -- well, not looked at his

18 record, but who has ever made this claim concerning this

19 person, but given the evidence that the Plaintiff has shown to

20 the Court in all of his efforts to try to exhaust his

21 administrative remedy concerning this issue, because it's only

22 this issue that I have a problem with with him.

23     THE COURT: I understand that.

24     MR. BROWN: Yeah, and the Plaintiff would like to submit to

25 the Court some added case law as exhibits for the Court.

1    THE COURT: Well, I'm going to afford you an opportunity to

2  make a submission after the hearing to provide them at that

3  time or if you want us to take them now, we will take them now,

4  but they're not case exhibits, they're not an exhibit from

5  testimony or anything like that.

6    MR. BROWN: It's just to support the argument and the facts

7  that the Plaintiff is putting forth.

8    THE COURT: All right, we will take them collectively as

9  Plaintiff's Exhibit No. 5, and we will do it that way. One set

10 of documents, I don't know how many cases there are, we will

11 identify it.

12    MR. BROWN: Without taking up too much time of the Court.

13    THE COURT: I wanted to give you as much leeway as

14 possible.

15    (At this time Plaintiff's Exhibit No. 5 was marked for

16     identification.)

17    THE COURT: Mr. Thiel, do you have any cross examination?

18    MR. THIEL: I do not, Your Honor.

19    THE COURT: Anything further?

20    MR. BROWN: I forgot something I wanted to bring to the

21 attention of the Court. The testimony of -- the earlier

22 testimony of the Defendant, when he admitted under oath that he

23 does recall me giving him administrative remedies concerning

24 this matter, this issue that we are here before today. I just

25 wanted to point that out that he does recall.

1     Although, he say vaguely -- but my questioning to him was,

2   does he remember, does he recall me filing about this issue,

3   and he said -- basically, he confirmed it, he basically

4   confirmed it, he said vaguely, but yeah, he confirmed it, he

5   confirmed it.

6     And the Defense tried to address that, Your Honor. I'm

7   done.

8     THE COURT: Exhibit No. 5 contains a collection of seven

9   cases that you've asked us to consider, in support of your

10  position, and we will do so. As long as there's no further

11  cross examination, no testimony --

12    MR. THIEL: None, Your Honor.

13    THE COURT: -- no redirect?

14    MR. THIEL: None, Your Honor.

15    THE COURT: Do I understand it, then, Mr. Brown, that you

16  want to make these exhibits part of the record?

17    MR. BROWN: I want to make those exhibits part of the

18  record, if possible.

19    THE COURT: Mr. Thiel, do you have any objections to

20  Plaintiff's Exhibits 1 through 5?

21    MR. THIEL: I do not, Your Honor.

22    THE COURT: Plaintiff's Exhibits 1 through 5 are admitted.

23  I don't know if you formally moved.

24    MR. THIEL: I did not, Your Honor. Let me just make sure

25  that I referenced all of them.

1     (At this time Plaintiff's Exhibit Nos. 1-5 were admitted

2      into evidence.)

3     MR. BROWN: I'm just trying to be as forthright as I can

4 about this issue or any issue that I have before the Court. I

5 hope the Court takes into consideration all of the evidence.

6     THE COURT: I will take into consideration your testimony,

7 as well as the testimony from the Defense, and I will make a

8 recommendation based upon findings of fact that I will ask both

9 sides to submit within, I don't know, is two weeks too soon?

10 Depends on your schedule.

11     MR. THIEL: Your Honor, one, I think I need the transcript

12 to do that; two, I have a medical malpractice trial starting on

13 the 15th and another starting on June 12th.

14     THE COURT: So you tell me how much time do you need? Shall

15 I say 30 days within receipt of the transcript?

16     MR. THIEL: That will be great.

17     THE COURT: Mr. Brown, I'll afford you the same

18 opportunity. We will provide you a copy of the transcript, as

19 well. You will also have 30 days from the date of your receipt

20 of the transcript to provide us with proposed findings of fact

21 and conclusions of law, okay?

22     MR. BROWN: Okay. Will I get the exhibits back?

23     THE COURT: We will see that you get the exhibits, we will

24 see that you get copies of them. We will either file them on

25 the docket, Mary, you can file them on the docket, you can get

108

1   them off the docket.

2       MR. THIEL: Also, let the record reflect that he's got

3   Defense Exhibits at least 1 through 9 already, so they won't

4   have to be provided to him. He can take that with him.

5       MR. BROWN: You don't want to take this back?

6       MR. THIEL: No, that's yours.

7       THE COURT: Let's go back, from the Defense standpoint,

8   about the admission.

9       MR. THIEL: Admission of 1 through 11, Your Honor.

10      THE COURT: Do you have any objection to the admission of

11  Exhibits 1 through 11, Mr. Brown?

12      MR. THIEL: Can I approach? 1 through 9 are here and 10

13  through 11 were the administrative remedy forms from the March

14  22, 2013 submission, and I think the May 15th of 2013

15  submission that you got a rejection notice back. Your BP9 and

16  11, okay?

17      MR. BROWN: All right.

18      THE COURT: So 1 through 11 then are admitted.

19      MR. THIEL: Thank you, Your Honor.

20      (At this time Defendant's Exhibit Nos. 1-11 were admitted

21       into evidence.)

22      THE COURT: Now, we will order that the transcript be

23  transcribed and provided, and we will then receive your

24  proposed findings of fact and conclusions of law within 30 days

25  from the date of your receipt of the transcript.

1    MR. BROWN: Conclusions of law can be the exhibits that I

2 gave?

3    THE COURT: They can be written submissions. Based upon the

4 testimony, you can let me know what you think I should find as

5 a fact and conclude as a matter of law, okay?

6    MR. BROWN: All right.

7    THE COURT: Anything further?

8    MR. BROWN: I don't have a lot of the resources, and I'm

9 not -- you know, I'm not privy to those --

10    THE COURT: If you don't file the proposed findings and

11 conclusions, I'm not going to hold that against you, in any

12 way, I'm just going to proceed. I'm just affording you that

13 opportunity.

14    MR. BROWN: It's not going to be held against me?

15    THE COURT: No, I will not hold it against you, I'm

16 affording you that opportunity, just as I'm affording the

17 Defendants the same opportunity.

18    MR. BROWN: Can the Court take the exhibits that I just

19 gave as like -- to support my case here today?

20    THE COURT: Well, I understand what you want me to do with

21 them, but at this point, I'm not going to find, as a matter of

22 fact, today, that these are, in fact, the facts of this case.

23 I will take it under advisement, I understand your position,

24 but I will make appropriate findings and appropriate

25 conclusions when the matter is now ripe for me to do so.

110

1      That will be within 30 days from the receipt by you and by

2  counsel for the Defendant of the receipt of the transcript.

3  Okay?

4      MR. BROWN: All right. So I'm go to get the exhibits back

5  in the mail?

6      THE COURT: They'll be placed on the docket. Our courtroom

7  deputy Mary Schirra indicated you will be mailed a copy of the

8  exhibits, okay?

9      MR. BROWN: Okay, I appreciate it.

10     THE COURT: No problem. The exhibits that you submitted,

11  not the ones from the Defense because you already have those.

12     MR. BROWN: Yes.

13     THE COURT: Okay. If there's nothing further --

14     MR. THIEL: Thank you, Your Honor.

15     THE COURT: -- we're adjourned. Thank you for your

16  participation here today.

17     (At this time the proceedings were adjourned.)

18

19

20

21

22

23

24

25

C E R T I F I C A T E

1

2

3       I, KRISTIN L. YEAGER, Official Court Reporter for the

4  United States District Court for the Middle District of

5  Pennsylvania, appointed pursuant to the provisions of

6  Title 28, United States Code, Section 753, do hereby certify

7  that the foregoing is a true and correct transcript of the

8  within-mentioned proceedings had in the above-mentioned and

9  numbered cause on the date or dates hereinbefore set forth; and

10  I do further certify that the foregoing transcript has

11  been prepared by me or under my supervision.

12

13                           S/Kristin L. Yeager
                            KRISTIN L. YEAGER, RMR,CRR
14                           Official Court Reporter

15

REPORTED BY:
16
     KRISTIN L. YEAGER, RMR,CRR
17      Official Court Reporter
        United States District Court
18      Middle District of Pennsylvania
        P.O. Box 5
19      Scranton, Pennsylvania  18501

20

21

22           (The foregoing certificate of this transcript
    does not apply to any reproduction of the same by any means
23  unless under the direct control and/or supervision of the
    certifying reporter.)

24

25